William Wilmes, Appellant, v. Chicago, Great Western Railroad Co., Appellee.

**NEGLIGENCE:** License—Non-Licensed Use of Premises—Effect. It
1 is suggested that a license to cross private grounds for one purpose affords no protection to the licensee when crossing such premises for a purpose for which he has no license.

PRINCIPLE APPLIED: See No. 2.

**NEGLIGENCE:** Trespassers—Attractive Agencies—Railway Wreck.
2 An owner or occupant of premises *owes no duty* to an infant who, without the knowledge or invitation, express or implied, of such owner or occupant, goes, out of idle curiosity, upon such premises, and is injured by some dangerous agency. And the existence of a railway wreck, consisting of two overturned box cars and promiscuously interwoven trackage, does not constitute such a known, attractive and dangerous agency as to amount to an implied invitation to children to come upon the premises, out of idle curiosity, to view it, and thus bring the child within the "law of attractive agencies."

PRINCIPLE APPLIED: Two box cars, by reason of a wreck, were overturned at 9:30 A. M. in plain view and within 100 yards of defendant's roundhouse, and within three blocks of a public school, and at a point where the right of way had for years been used by pedestrians as a place for public travel. One of the rails was so bent and confined in the interwoven wreckage, that, without anyone's knowing such to be the case, it was under great. tension. The wreckage did not suggest danger to anyone approaching or passing it. Plaintiff, 11 years of age, had, prior to this time, frequently traveled a near-by path on the right of way in carrying dinner to his father. Three hours after the wreck occurred, during which time the wreckage was wholly unguarded, plaintiff, on his way to school, went out of his way, from curiosity, to view the wreck. While standing near the bent rail, two men came along and laid their hands upon the said rail. Instantly it was released and sprang back and injured plaintiff. *Held*, plaintiff was a trespasser and defendant owed him no duty—that the existence of said wreckage did not constitute such a dangerous and attractive agency as to amount, impliedly, to an invitation to children to come, out of curiosity, to view it.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

MONDAY, MARCH 20, 1916.

ACTION to recover for personal injury. Directed verdict for the defendant in the court below. Plaintiff appeals.— *Affirmed.*

*Killpack & Northrop* and *H. L. Robertson,* for appellant.

*Saunders & Stuart* and *Carr & Evans,* for appellee.

GAYNOR, J.—This is an action to recover damages for personal injury. It is claimed that the defendant, while operating a railway, had a wreck on its road in the city of Council Bluffs, near a point where Sixth Avenue crosses Third Street; that in such wreck one of the rails on defendant's line of track was thrown into a curved position and held there by the strain of the wreckage upon it, and remained in such curved position for some hours; that the wreck was at a point where

defendant's right of way had, for many years, been used by pedestrians as a place for public travel, all with the full knowledge of the company; and that the company had full knowledge of the condition in which the rail was left and its danger to the traveling public; that, in the exercise of reasonable care for the safety of persons generally, the defendant should have known of the danger in leaving the rail in its strained, curved position; that, with such knowledge, it permitted the rail to remain in such position without guard or any person to keep the traveling public from approaching it; that, while plaintiff was passing the rail in the condition hereinbefore described, it was suddenly relieved of its strain and immediately sprang with great violence from said curved position to a straight line, and injured the plaintiff. Defendant filed a general denial. At the close of the testimony, the court sustained a motion to direct a verdict for the defendant on the ground that no negligence on the part of the defendant had been shown, and that no situation had been disclosed wherein the defendant could be reasonably held to anticipate danger to anyone. Thereupon, the plaintiff's petition was dismissed, and judgment entered against him for costs. Plaintiff appeals, and assigns error upon the action of the court in so holding.

The evidence submitted is substantially as follows: At about 9:30 in the morning of the accident, on the corner of Sixth Avenue and Third Street, two freight cars were wrecked and tipped over on defendant's line. The remainder of the train, from which the wrecked cars were thrown, went on and left them. The wreck was in plain sight of defendant's roundhouse, not more than 100 yards therefrom. The scene of the accident was about three blocks from the Third Street school. The wreck caused one of the rails to curve upward and outward. One of the ends of the rail was fastened down by spikes, and the other end concealed, either in the pile of wreckage or under the car. It had been in that condition for about three hours before the plaintiff arrived. Immediately upon plaintiff's arrival, he stopped by the curved rail. Two men

came along and put their hands upon the rail, and it immediately sprang out with great violence and struck the plaintiff and injured him. Plaintiff, at the time of the accident, was about 11 years old and a school boy. The injury occurred about 12:30 in the afternoon. During this noon hour, after the boy had had dinner, he left his home to go to school. He went down where the cars were wrecked, not having heard of the wreck before. He did not need to go that way to school. There was no railing or guard around the wreckage, and there was no one to keep persons from approaching the wreckage. There is no evidence that anyone connected with the company knew of this bent rail. There is evidence that for many years the public traveling on foot had used defendant's right of way, and that there was a footpath that plaintiff had used prior to this time, running near the place where this wreckage was, and which, before that time, he had used in carrying dinner to his father, who worked at some point beyond the place of the wreck.

I. The plaintiff bases his right to recover on the theory that the wreck, as left by the defendant upon the right of way, was a thing attractive to children of the age of the plaintiff and was dangerous, and should have been

**1. NEGLIGENCE: license: non-licensed use of premises: effect.** guarded. There is some suggestion in argument that the plaintiff had a right to be where he was at the time of the injury, because he had, previously to that time, passed over the track or path in close proximity to the place where the wreck occurred, in carrying dinner to his father at some point beyond the wreck; that, because he had used this path for that purpose before, he was not a trespasser at the time that he was injured, and that the company owed him some duty to keep the path so used free from dangers imperiling the safety of those who were using the path under an implied license. But it is apparent from this record that the plaintiff was not, at the time, pursuing any right which he acquired, if he acquired

any as licensee; so we give no attention to this phase of the case.

Plaintiff relies and must rely for his recovery upon what is known as the law of dangerous and attractive agencies. Appellant calls our attention to and relies upon the doctrine so ably announced in *Edgington v. Burling-*

2. **NEGLIGENCE:** *ton, C. R. & N. R. Co.,* 116 Iowa 410, and
trespassers:
attractive
agencies: rail-    cases therein cited. In that case are reviewed
way wreck.          nearly all the authorities bearing upon the question here under consideration, and since the opinion was filed it has been uniformly followed by this court. In every case in which the question there determined has been before this court for review, the doctrine announced has been fully recognized and adhered to. See *Fishburn v. Burlington & N. R. Co.,* 127 Iowa 483; *Brown v. Rockwell City Canning Co.,* 132 Iowa 631; *Anderson v. Ft. Dodge, D. M. & S. R. Co.,* 150 Iowa 465; *Hart v. Mason City Brick & Tile Co.,* 154 Iowa 741; *Ashbach v. Iowa Tel. Co.,* 165 Iowa 473. We are fully persuaded that the doctrine announced in that case is not only a correct doctrine, but one just and humane, and fully in line with the best reasoned cases in other jurisdictions.

An examination of the authorities shows a recognition and application of the following well established rules:

First. It is the duty of each member of organized society to use his own property so as not to injure, unnecessarily, the property or person of another. It is all expressed in the doctrine, so long recognized that it has become axiomatic: *Sic utere tuo ut alienum non laedas,*—no man is at liberty under the law, to use his own property so as to endanger the property or person of another. This doctrine had its origin and growth in and out of necessity, and the necessity for it was found in the growth and development of our social organization. When men came together in social compact, it was found that the fullest enjoyment of social right and duty can be attained only when each is required to conduct himself and

manage and control the property over which he was given the individual right of supervision so that the rights and interests and welfare of other members of the social compact may not be interfered with or impaired unreasonably or unnecessarily; that each must exercise his own individual right with due regard for and in recognition of the right of others, to the fullest enjoyment of their rights of person and property within the limits of the social compact. This rule does not impinge upon nor impair the right of the individual to the exclusive enjoyment of his own property, unmolested and undisturbed by others. But, in the exercise of this right, an obligation, under the law, rests upon him as a member of the social compact, to exercise his rights in a manner that may not unfairly and unreasonably or unnecessarily imperil the safety or welfare of another. Every right given to the individual in a social compact is given and held under this restriction.

In the management and control of property, the owner has a right to determine for himself the use to which it shall be put, and the condition in which it will be maintained, provided he does not violate this fundamental doctrine. To this end, he is required, as a member of the social compact, to exercise reasonable care in the discharge of this duty. When this duty is discharged his obligation is discharged, and beyond this he assumes no liability, no matter what happens. In any particular case, the question involved is: Has the party discharged this obligation, or has he failed to discharge it? Having discharged his obligation, he has not failed in any duty that he owes to others; but, failing to discharge it, he is held responsible as for negligence.

Negligence always presupposes a duty and a failure to discharge that duty. Therefore, before we can fix liability for the doing of, or the failure to do, a particular act, we must first ascertain whether or not, under the law, it was the duty of the party to do the thing charged, or not to do the thing charged. As said before, everyone has an absolute right

to the exclusive possession, management and control of his own property. He owes no active duty in this to one who wrongfully comes upon his property; one who is a mere trespasser. If one enters upon the property of another unbidden, he violates the right of the other to the exclusive possession and control of his own property. He becomes a mere trespasser upon the rights and domain of the other, and assumes all the risks incident to such trespass; and he must be held to have assumed all the dangers which he encounters in such wrongful proceeding. Having violated the right of the other to the exclusive possession and enjoyment of his property, he cannot be heard to say that, in violating that right, he encountered hidden dangers which resulted in his injury. Thus it is held that one who, without authority, without license or permission, "officiously or needlessly" interferes or meddles with the property of another to which he has no legal right, has no complaint if he is thereby injured. One who enters upon the property of another can only complain of the manner in which another maintains his property when he is able to show that he is rightfully upon the other's property by invitation or otherwise. This invitation need not be expressed. It may be implied from the relationship or the conduct of the parties. The invitation may be found in the conduct of the party, in the use of his property, and in the manner in which it is maintained. As said in the *Edgington* case:

"If, however, the owner take away the fence, throwing his lot open in unused and unimproved condition, leaving the public to swarm over and across it, and children to play upon it, he cannot be held innocent of wrong if by his act the semi-public use of his property is made hazardous to human life, and he fails to take reasonable precaution against the danger thus occasioned."

The duty to maintain it in a safe condition is measured by the use to which the property is put, and the danger to others which may be reasonably anticipated to result from the condition in which it is kept. No one questions "the rules

which assure to a person dominion over his own property and deny protection to the trespasser in his wrongdoing.'' These are of the most ancient origin, and are just. But, however exclusive the right of the owner of property, real or personal, to deal with it as he likes, yet his dealing is always subject to the Latin maxim hereinbefore set out.

In every case of the kind that we are dealing with now, in so far as the conduct of the party is involved, the question is: Did he violate any duty that he owed to the general public or to particular individuals, in the manner in which he managed, controlled, or left his property touching which he is charged with negligence? The relationship of men to property and to each other is so multifarious, so varied, that even the best pronounced general rule for their government is found to involve much difficulty in its application.

II. We gather further from the cases heretofore referred to that, if one maintains upon his place a dangerous place or instrumentality, and, without warning against such dangers, invites another to come while the place or instrumentality remains exposed or unguarded, without warning or protecting him against such danger, he is liable to the one so invited, if, without fault on his part, he receives injuries therefrom. We gather the converse of this proposition that, if one wrongfully, without leave or license, unbidden, enters upon the premises of another upon which there is a dangerous place or instrumentality, he assumes all the hazards of the place—this upon the theory that he is a trespasser upon the property and rights of the other, and the other owes him no duty except not to actively or willfully inflict the injury upon him.

This brings us to the question, What constitutes an invitation? These authorities hold that one who maintains upon his place, and permits to remain exposed, something dangerous when approached or used, and of such an attractive character that he knows, or, as a reasonably prudent man should know, it will invite the attention of children and draw them to it, because of their sportive and playful natures, he impliedly

invites them to come; that, in exposing such an instrumentality, with the knowledge that it will attract children, he occupies the same position when they come as if he had beckoned to them and they followed. We are not here discussing the question of contributory negligence on the part of the child. We will assume the child too young to be chargeable with negligence. We are not dealing with a trespassing child; for no one is a trespasser who comes by invitation of the owner. All the cases of attractive nuisance seem to rest upon the thought that exposing anything of a character that appeals to children's nature, and, by appealing, draws them to it, is, in its very nature, an implied invitation to them to come. It is not material in an inquiry of this kind whether the children had been accustomed to come or not; whether it had remained a long time or a short time. The question is: Did the party charged expose to the public a thing of such an attractive nature that, as a reasonably prudent man, he should have known that it would draw children to it, and, having drawn them there, they were likely to be injured from the character of the instrumentality?

These cases of attractive nuisance deal only with children who are not sufficiently mature and discreet to have legal capacity to assume a risk. If one is of mature age, or of sufficient age to know and appreciate the danger that attended his act, even though attracted by the instrumentality, he cannot complain if he is injured. He cannot go into a place the danger of which he appreciated and understands, even though attracted to it, and recover if he is injured.

The material facts of the instant case are that two freight cars were wrecked and tipped over on defendant's line. The wreck caused one of the rails to curve upward and outward, one end of the rail being fastened by spikes, and the other concealed either in the pile of wreckage or under the car. This condition had remained about three hours before plaintiff's arrival. Plaintiff heard of the wreck and came down out of curiosity to view it. The only purpose that he had in

coming there was to view the wreck. When he arrived, he stopped by the curved rail. Two men came along and put their hands upon the rail, and it immediately sprang out with great violence and struck the plaintiff and injured him. What these men did when they placed their hands upon the rail does not appear. The fact disclosed is simply that they placed their hands upon it and that immediately it sprang out. Plaintiff, at the time, was 11 years of age and a schoolboy. The injury occurred at about 12:30 P. M., during the noon hour. After dinner, he left his home to go to school. This wreckage was not in the line of travel to reach the school. He therefore did not need to come this way to reach the school. The wreck was about three blocks from the school. There was no railing or guard around the wreck, and no one there to keep persons from approaching the wreck. There is no evidence that anyone connected with the company knew of this bent rail. There is evidence that, for many years, the public traveling on foot had made a beaten pathway by the place where this wreck was lying; that plaintiff had, prior to this time, used this path in carrying dinner to his father at some point beyond, not disclosed; that he was not using the path at this time for the purpose of travel; that he had come to the wreckage out of curiosity alone, and for the purpose of viewing it. We are asked, under this record, to say that the defendant knowingly permitted a dangerous instrumentality to be or remain upon its right of way; that the thing was, as left, in and of itself, of such an attractive character that it would appeal to the sportive and playful instincts of children, and draw them to it; that the defendant, as a reasonably prudent person, knew or should have known this, and that, upon their coming, their safety would be imperiled. It is the law that, if one is a trespasser upon the property of another, the owner owes him no duty until he is discovered there and in a place of peril. Then his duty to him begins, and this duty is to exercise reasonable care, after discovering him, not to inflict injury upon him. Even an infant upon the premises of another

as a mere trespasser, without leave or license or invitation, without the knowledge of the owner, cannot complain of injuries received while there, unless the injuries can be traced to some active negligence on the part of the owner of the property after discovering his presence. See *Burner v. Hig-man & Skinner Co.*, 127 Iowa 580, in which it is said:

"Neither the owner nor the occupant of property is bound to keep it in such condition as that no one may be injured thereby. Liability is predicated only on failure upon the part of the party charged, to perform some duty which he owes to the one who is injured. If one, therefore, goes upon premises without invitation, express or implied, the owner or occupant thereof is under no duty to look out for his safety; and, if he is injured while there without lawful right, or as a bare licensee, no recovery can be had"—citing Thompson on Negligence, Secs. 946, 1075.

The general rule also is that a bare license to use the premises of another, for the sole purpose and benefit of the licensee, imposes no obligation upon the owner to keep the premises in a safe condition for the use of such licensee. He takes it as he finds it; and, if injured by conditions there existing at the time that he assumed to exercise his license, he cannot complain. See, also, *Brown v. Rockwell City Canning Co.*, 132 Iowa 631. In this last case it is said, speaking of the plaintiff:

"There was no invitation to him to be in the annex for the purpose of husking corn, for there was no corn there to husk. It is unquestioned that he and the other boys were there out of idle curiosity, and, while their presence there may not be necessarily imputed to them as a fault, it did not impose on the defendant any particular duty to look out for their safety, in the absence of reasonable knowledge or anticipation that their safety would be imperiled by the maintenance and operation of its machinery. We find nothing in the record to indicate that the superintendent of the defendant, or that Harrison, the representative of the Globe Company, or the

employees assisting in the installation of the machinery, had any knowledge that the boys were playing about the machinery or doing any acts with reference to it which involved them in any peril. The boys were, as already suggested, in the building, not in pursuance of any implied invitation, but for their own purposes, and no duty arose with reference to them until the employees of defendant had some reason to anticipate that they would be endangered by the operation of the machinery. In determining this question, it is entirely immaterial to consider whether the boys were *sui juris* or not, for the inquiry is not as to the ability and capacity of the trespasser, but rather the duty of the one who is charged with the negligent acts.''

In *Thomas v. Chicago, M. & St. P. R. Co.,* 93 Iowa 248, the person alleged to be injured was a boy about three years and ten months old. He was playing upon an open, uncovered bridge, located on defendant's main line road. The child went upon the track and the bridge and was in plain sight of the station and at all points along the road leading from the station to the place of the accident. The defendant's employees, with knowledge that children were upon the track, started the train, the engine running backward and with a pilot attached. In disposing of the case, the court said:

"If they were trespassers (meaning the children), then the company owed them no duty until its employees actually saw them upon the track, and in a place of danger. Then, and not till then, did any active duty, on the part of defendant's employees commence. It has long been the established rule in this state that a railroad company is not required to keep a lookout for trespassers, and that it is not negligent in failing to discover them upon its track. This is an undoubted rule, sustained by an unbroken line of authorities.''

The court further said:

"There is no question of contributory negligence on the part of the child in this case. The infant was of such tender years that it was not *sui juris,* and . . . as a matter of

law, it should be held. it was not guilty of contributory negligence in going upon the track.  .  .  .   In determining this question of duty, it is entirely immaterial whether the trespasser is *sui juris* or not, for the inquiry is not as to the ability or capacity of the trespasser, but rather the duty of the one who is charged with the negligent acts.  For this reason, the better considered cases hold that it is entirely immaterial that the trespasser is an infant, idiot or lunatic, in determining whether he was a trespasser.''

The court further said:

''In order that we may not be misunderstood, it is perhaps well to say that there is an apparent exception to the general rule above stated in what are known as the 'turntable cases,' but we think the exception is not, in fact, an exception, but rather an extension of the principle to cover a different state of facts.  In the turntable and other like cases, the defendants are held liable because the nature of the machine or agency which caused the injury, was such as was well calculated—was of such a nature, and left in such a position, as that it was likely—to attract children.  The temptation thus presented to children is, in the cases just referred to, made to take the place of an express invitation to an adult, and with much reason.''

In *Wendt v. Inc. Town of Akron*, 161 Iowa 338, particular point at page 345, this rule is recognized.  It is said:

''The general rule doubtless is that an owner of premises owes to a licensee no duty as to the condition of such premises, save that he should not knowingly let him run upon a hidden peril, or wantonly cause him harm''—citing *Gwynn v. Duffield*, 66 Iowa 708, 713; *Thomas v. Chicago, M. & St. P. R. Co.*, 93 Iowa 248; *Connell v. Keokuk Electric R. Co.*, 131 Iowa 622; *Brown v. Rockwell City Canning Co.*, 132 Iowa 632, 637; *Anderson v. Ft. Dodge, D. M. & S. R. Co.*, 150 Iowa 465, and in that case it is said: ''These cases involve the question as to the use of dangerous premises and whether the persons

injured thereon were trespassers, bare licensees, or licensees by invitation. In the *Connell* case, a boy was injured by an electric wire, and the court instructed the jury that if the place where the plaintiff was injured was resorted to by persons generally, of which the defendant had knowledge, then it was the duty of defendant to exercise ordinary care to prevent danger, and a failure to exercise such care would constitute negligence. This is on the theory that plaintiff was more than a bare licensee."

See *Herzog v. Hemphill*, (Cal.) 93 Pac. 899.

These rules, however, are subject to the modification that, in case of an infant,—one of tender years and not capable of using judgment and discretion,—one may be liable if he exposes upon his premises, at a place where he knows children are in the habit of congregating and playing, a dangerous instrumentality or pitfall. This rests on the thought that, with the knowledge of the fact that children are congregating there and engaged in playing, connected with the further fact that they are too young to have judgment and discretion and appreciate dangers even when exposed, he is guilty of a culpable wrong in allowing the things to exist in such proximity to the playground. All reasonably thoughtful and prudent men know, or must know, that children are liable to be injured by instrumentalities or places so left. The bare license doctrine does not always apply to infants. This exception, however, does not apply to the case at bar; for there is no evidence here that the children were in the habit of playing in the vicinity of this wreck, or of congregating there, or that defendant had any notice or knowledge of any such condition as would bring it within the rule.

There is no actionable negligence involved in the wrecking of this train, nor in the tearing up of the track, nor the the bending of the rail. These, so far as the record discloses, were the result of unavoidable casualty. But whether the wrecking of the train was the result of carelessness or negligence on the part of the defendant company is wholly immate-

rial, for the reason that, in the wrecking of the train, it violated no duty that it owed to the plaintiff or to the public. The gravamen of the complaint is that, after the train had been wrecked and these two cars thrown from the track, and the rail bent in the position in which it was found, the defendant was guilty of actionable negligence in permitting it to remain so, unguarded and unprotected. These were ordinary box cars thrown from the track upon defendant's right of way and left there. There is no complaint, nor is there any evidence, that these cars, in and of themselves, as left there upon the right of way, were left in any position to suggest peril to anyone who approached them, or passed along the path in the vicinity of them. There is nothing to indicate that the position of the cars suggested any necessity for a railing or guard to protect the public or anyone passing in this path from injury. The only complaint is that one of the rails of the track had been bent in the wreck so as to extend upward and outward; one end fastened by spikes to the ties, and the other end concealed under the cars or wreckage. There is no evidence that anyone in the employ of the company knew of this bent rail, nor was there anything shown which would suggest, from the nature of the wreck, that they should have known of the existence of this bent rail, or that the condition in which it was left involved danger. In fact, the record discloses that the rail had remained in the position in which it originally was for three hours before the accident; that it remained in that condition unchanged, until some parties, whose names are not disclosed, came along and interfered with it. The record is that two men came along and put their hands upon it. What they did when they put their hands upon it, is not disclosed, but it is apparent that it was loosened and sprang from its fastening and injured the boy.

There was nothing in this wreck and in the condition in which it was left that brings it within the rule of attractive agencies likely to draw to it children for the purpose of play, or that would appeal to the sportive and playful nature of a

child.   So far as this wreck was concerned, so far as any knowledge of it is traced to the defendant, it was an inanimate piece of matter, thrown in a pile upon defendant's right of way, with none of the characteristics of the toy, and was on defendant's own premises.   No childish instincts were called into life by its presence.   The instinct of curiosity is an instinct in all human beings, whether mature or immature.   There was nothing to suggest danger to one who came to the place of the wreck; and, if it could be said that there was, it is not shown to have come to the knowledge of the defendant company.   It was not placed there by the defendant for its purposes, nor can any actionable wrong be imputed to the defendant for its being there.   The whole doctrine of attractive nuisance seems to rest upon the thought that the defendant is liable if he knowingly places in an exposed position, and at a place where children are likely to congregate, a dangerous instrumentality; and this liability rests on the further thought that he is bound to know, appreciate and understand the natural instincts of the child to play, and that it will be attracted by such agencies and drawn to it by this subtle influence.   Therefore, when he sets in active motion these childish instincts, he is bound in law to guard the child against injury which may come to it in following the promptings of its childish nature.   Thus, if the child is attracted across the boundary of defendant's line by a dangerous and attractive thing placed, kept or maintained upon his premises, he owes a legal duty to the child to guard it against injury therefrom; since, by so placing and leaving it, he invites the child to come.   His liability rests upon the thought that he has exposed a thing of danger in an open place accessible to a child.   He has clothed it in attractive garments which appeal to the childish mind.   He is charged with liability because of the imputed knowledge of the habits of children to use a thing so temptingly presented as a plaything, and he is liable because he has invited the child, by his conduct, to amuse itself with the thing left so dangerously

exposed. This is the basis of the claim upon which the defendant is charged with liability as for negligence in a suit for injuring a child, where, if the person injured had been an adult, no liability would attach.

We do not mean to depart from the rule in which it is held that liability attaches where a party leaves upon his own premises a thing of danger, when he knows that children are accustomed to come upon his place for the purpose of play, even though not attracted by any instrumentality placed there by him. That presents another phase of the law, which is well recognized. We are dealing now with the liability which is found to rest upon what is known as the law of attractive agencies. The law clearly distinguishes between children too young to have judgment and discretion, and those who are old enough to exercise their faculties. In all cases, even of trespass, the tender years of the child are subjects for consideration, both when we consider the conduct of the child and the cause from which the injury arose.

In all cases, the law is careful for the safety of human life, and to protect children of tender years from injury. But the extent of this solicitude does not remove the protection of the law from others. Even entertaining the highest consideration for the safety of the child, and imposing upon others the duty to exercise care for its protection, we cannot overlook the fact that the defendant in this case is not shown to have been guilty of any actionable wrong in what it did, and, though the action is a sad one, we cannot hold the defendant liable, without proof of actionable wrong on its part. The showing here did not impose upon the defendant a duty to guard this wreck, and there is nothing in the wreck itself that any ordinary mind could conceive to be attractive, or an invitation to children to come and play. There is nothing in it which could serve as an invitation to this boy to come and use it for any childish reason. It is not shown that the company had any knowledge that it was in the least dangerous, even to a child invited there. It had remained but a few hours.

The child came as an idle spectator, prompted by the curiosity that led others there to view the wreck.

We find nothing upon which to rest liability, and in this conclusion we rest our holding that the case ought to be and is—*Affirmed.*

LADD, PRESTON and SALINGER, JJ., concur.