JAMES MASSINGHAM, Administrator, Appellant, v. ILLINOIS
CENTRAL RAILROAD COMPANY et al., Appellees.

**NEGLIGENCE:** Nonattractive Nuisances. A plank shelf along the
side of a cofferdam, adjacent to a bridge abutment which was
securely inclosed by a substantial barbed wire fence, located
in the open country and fairly removed from habitation, is
not an "attractive nuisance" in such sense as to render the
owner responsible for the death of an immature child, who, as
a mere licensee, at the best, went upon the shelf and fell there-
from into the water.

*Appeal from Buchanan District Court.*—E. B. STILES,
Judge.

NOVEMBER 16, 1920.

ACTION in the name of James Massingham, as adminis-
trator, against the Illinois Central Railroad Company and
Walker D. Hines, director general of railroads, for dam-
ages. The defendant Illinois Central Railroad Company
appeared specially, and moved to dismiss plaintiff's cause
of action against it, on the grounds that the agent upon
whom the original notice was served, was not the agent of
the railroad company, but of the director general of the
United States railroad administration, and that the rail-
road company was not, at the time of the injury complained
of, engaged in the operation of a railroad. This motion was
sustained. At the conclusion of plaintiff's testimony, a mo-
tion to direct a verdict for the other defendant was
sustained by the court. Judgment was entered against
plaintiff for costs, and he appeals.—*Affirmed.*

*M. A. Smith* and *Cook & Cook,* for appellant.

*Helsell & Helsell* and *Hasner & Cherny,* for appellees.

STEVENS, J.—About 1913, the Illinois Central Railroad Company, which owned and operated a line of railway extending east and west through the city of Independence, constructed a cofferdam, a few feet distant from and around a concrete abutment on the west side of the Wapsipinicon River, a short distance west of the city, on which one end of a steel girder bridge rested. The cofferdam was semicircular in shape, and extended from the embankment west of the abutment on the north side of the bridge, around the same to the embankment on the south side thereof. As we understand the record, the cofferdam was constructed of piles and heavy planks driven into the ground, or attached to framework extending a short distance above and into the water, making a complete and continuous inclosure. The space between the abutment and the cofferdam was filled with water, several feet deep, which was very foul with oil and petroleum settlings. Inside of the cofferdam and about one foot from the water there was a beam, or plank, firmly attached to and extending the full length of the structure.

On May 23, 1919, Leonard Massingham, about 8 years of age, and Leonard Ritchie, a companion somewhat older, crossed the river on the railroad bridge, crawled through the right of way fence on the north side of the track, which extended to within a foot or 18 inches of the concrete abutment, and played for a time upon a pile of rock, north or northwest of and near the cofferdam. After throwing some rocks into the river, Leonard Massingham, who had on rubber boots and rubbers over them, attempted to go around the cofferdam, on the beam above referred to, facing the abutment, and walking sidewise. Before he had proceeded far, he fell forward into the water and was drowned. His body was removed in about 20 minutes, but, notwithstanding the heroic efforts of a physician, with the aid of a pulmotor, he was not revived.

The plaintiff charges negligence in the construction and maintenance of the cofferdam, which, he alleges, was of a character to naturally attract children, and to appeal to

their youthful instincts, without warning guard or protection of any kind; and that the agents and servants of defendant should have known and anticipated that children would assemble in the vicinity of the bridge along the river, to fish and for other purposes, and that they were liable to be attracted by the peculiar character of the structure, and lured to a place of danger.

As our conclusion is based upon the merits, the cause of action against each of the defendants being based upon the same facts, it is unnecessary to consider or decide the question raised by the motion of the defendant railroad company to dismiss the cause of action against it. If the ruling was erroneous, it was without prejudice. The record reveals that the railroad bridge crossing the Wapsipinicon River is located near the city of Independence, but outside of the corporate limits thereof; that there is a wagon bridge about one-half mile south, but no bridge north thereof for several miles; that the nearest dwelling house on the north side of the track is about one-half mile distant, and on the south side, about 600 or 700 feet distant; that fishermen frequently gathered along the bank of the river to fish; that on each side of the railroad track was a substantial barbed wire fence, extending within a foot or 18 inches of the abutment; that a path had been worn from the track down the north embankment to the end of the cofferdam; that children were occasionally seen in the vicinity of the bridge; and that deceased, his companion on the day of the accident, and other children, had previously, though it does not appear frequently, played around the bridge. One or two boys testified that, upon one occasion, when they were near the cofferdam, they saw some men working upon the track, one of whom may have been the section foreman. Neither the elevation of the bridge above the water nor the height of the abutment is shown.

The attractive nuisance doctrine, as applied in the turntable cases, was adopted in this state in *Edgington v. Burlington, C. R. & N. R. Co.*, 116 Iowa 410, and has been the subject of discussion in numerous later cases (*Gregory v.*

*Woodworth,* 93 Iowa 246, *Connell v. Keokuk Electric P. & R. Co.,* 131 Iowa 622, *Brown v. Rockwell City Canning Co.,* 132 Iowa 631, *Anderson v. Fort Dodge, D. M. & S. R. Co.,* 150 Iowa 465, *Hart v..Mason City Brick & Tile Co.,* 154 Iowa 741, *Wilmes v. Chicago, G. W. R. Co.,* 175 Iowa 101), the more recent of which are *Davis v. Malvern Light & Power Co.,* 186 Iowa 884, and *Graves v. Interstate Power Co.,* 189 Iowa 227.

The sole question in the case before us is whether the structure complained of was of a character and so located as to come within the definition of an attractive nuisance. It was manifestly not inherently dangerous. No machinery of any kind was connected therewith. The only way a child could be injured thereby would be to fall therefrom into the water and be drowned. The structure was not in itself dangerous. It is true that children might be tempted to gratify a spirit of adventure and go upon the dam and do what deceased was doing at the time of the accident, but it is not the law that property owners having lawful structures thereon, not in their nature dangerous or capable of inflicting injury upon children of tender years, are bound to guard the same against the possibility that someone may be injured while upon or about the same. As was well stated by Mr. Justice Weaver, in *Anderson v. Fort Dodge, D. M. & S. R. Co.,* 150 Iowa 465:

"To climb trees is as natural to the average boy as to a squirrel. Such sport is always attended with danger that the climber may lose his hold or break a branch and fall, to his severe injury. Not infrequently it may bring him to an elevation where he is exposed to contact with wires carrying electric currents, of greater or less intensity. If he falls and breaks his bones, or if he receives a stunning shock of electricity; ought the owner of the tree to be held liable in damages because he did not guard it against the approach of the lad, or because he did not give notice or warning in some way of the dangers to be apprehended in climbing it? No court has ever gone to such an extent,

and the establishment of such rule would render the ownership of real estate a very undesirable investment."

An adventuresome boy might attempt to walk across a railroad bridge upon top of a steel girder; and if he did so, and fell therefrom into the river, and was drowned, could it be said that the owner of the bridge was guilty of negligence in failing to provide guards at each end and along the girder, sufficient to prevent boys from going thereon? Certainly not. The structure complained of was located wholly upon defendant's right of way, and in reaching same, deceased crawled through a substantial barbed wire fence. It was across the river from the city, in the open country, and more or less remote from any dwelling house or place where children were accustomed to congregate. The evidence does not show that children were in the habit of frequently gathering about the structure to play, or that any agent or servant in the employ of defendant, unless upon the occasion referred to, ever saw them there. Deceased did not go upon the premises upon the invitation of the defendant, express or implied. He was, at best, a mere licensee. We are of the opinion that the doctrine contended for is not applicable to the facts in this case. This conclusion is not only in harmony with the prior decisions of this court, but in harmony with that of courts in other jurisdictions. *Coon v. Kentucky & I. T. R. Co.*, 163 Ky. 223 (173 S. W. 325); *Hageage v. District of Columbia*, 42 App. D. C. 109; *Gillespie v. McGowan*, 100 Pa. 144 (45 Am. Rep. 365); *Schmidt v. Kansas City Distilling Co.*, 90 Mo. 284. The motion to direct a verdict was properly sustained.—*Affirmed.*

WEAVER, C. J., LADD and ARTHUR, JJ., concur.