PAUL RADENHAUSEN, Guardian, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

548

MARCH 6, 1928.

*Cook & Balluff, J. G. Gamble,* and *A. B. Howland,* for appellant.

*Andrew L. Chezem* and *Henry Vollmer,* for appellee.

FAVILLE, J.—The accident out of which this action arose occurred in the city of Davenport. At the time of the accident, the appellee's ward was a boy seven years of age. South Howell Street in said city runs in a general northeasterly and southwesterly direction. The Chicago, Milwaukee & Saint Paul railroad track runs in a generally east and west direction, and near the place in question approaches South Howell Street on an embankment, and crosses said street on a viaduct. North of the Milwaukee track lies a switch track, which is referred to in the record as the "D. I. & D." track, which switch track is used by both the Milwaukee and the appellant. There are a number of houses located west of South Howell Street and south of the Milwaukee track. The land between the Milwaukee embankment and the D. I. & D. track, and lying west of South Howell Street, is low, and adjacent to said street there is what is referred to in the evidence as a pond, about 2 feet deep and 16 to 18 feet wide at the east end, and about 35 or 40 feet long. The appellee's ward lived in a house west of South Howell Street and south of the Milwaukee track. There were a number of other houses in the same locality, and it was the custom of the

people living in said vicinity, in order to reach the business portion of the city, to pass over the Milwaukee tracks to the north, and then pass eastward along the D. I. & D. railroad right of way to South Howell Street. This continuous travel had worn a path, which extended along the south side of the D. I. & D. track for some distance west of South Howell Street. At the time of the accident in question, the appellant's employees were engaged in moving a train, consisting of an engine and 35 cars, on the D. I. & D. track. It was headed westerly, and was moving at a speed of from 8 to 10 miles an hour. It was about five o'clock in the afternoon of May 24, 1924, when the injury occurred. The appellee's ward had left his home, to go to a store east of South Howell Street, on an errand for his mother. He was walking between the rails on the D. I. & D. track, when he saw the train approaching him, about two blocks away. He went outside the rails, and was walking upon a pile of cinders on the south side of the D. I. & D. track that had been placed in the path by the appellant about a month previously. This path was about 6 or 8 feet south of the south rail of the D. I. & D. track. The top of the rail was about 10 inches above the level of the path, before the cinders were placed thereon. The cinders completely covered the path. The pile was 10 to 20 feet long, according to the evidence. The depth of the cinders was estimated by various witnesses as from 12 inches to about 3 feet. The boy was walking along on this pile of cinders. The engine and several cars had passed by him, when, as contended by the appellee, the jar of the train caused the pile of cinders to slip from under the boy, and as a result, he slid toward the train, and his leg was caught under the moving cars, and was cut off below the knee.

The accompanying photograph gives a general view of the *locus in quo*. It is taken with the camera looking in a general southwesterly direction. It shows part of a train on the Milwaukee track, the viaduct crossing South Howell Street, the D. I. & D. track, the location of the pond, and the pile of cinders where the accident occurred.

The appellant moved the court for a directed verdict, which was overruled. It is contended that, under the record, there was no evidence of negligence on the part of the appellant that would justify the court in submitting the question to the jury. The

appellee charged certain "explicit, definite, and specific grounds of negligence," ten in number. We therefore must examine the several grounds of negligence alleged, which, however, we may group somewhat.

(1) The appellee alleged that the appellant carelessly and negligently permitted the existence and use of the path in question. The evidence shows that the path extended along the side  of the D. I. & D. track, and had been used for a long period of time by many persons living in that vicinity. The path was far enough removed from the rails of the appellant's track so that a pedestrian on said path would not be hit by a passing train. It did not cross the tracks. There is no evidence to show that the appellant did any act or thing that encouraged or invited the use of its right of way as a path by pedestrians so using it. The most that can be claimed at this point is an implied permission or license to use said path. The mere act of "permitting the existence and use of the path" did not, of itself, constitute actionable negligence. Even though the appellant was charged with knowledge that the appellee's ward or the public generally were using said path, and did not object thereto, this, in and of itself, would not constitute negligence on the part of appellant. Such permission, express or implied, might make appellee's ward a licensee, rather than a trespasser. See *Thomas v. Chicago, M. & St. P. R. Co.*, 103 Iowa 649; *Wagner v. Chicago & N. W. R. Co.*, 122 Iowa 360; *Masser v. Chicago,*

*R. I. & P. R. Co.*, 68 Iowa 602. Even though it be conceded that the appellee's ward was a licensee, still it was not negligence on the part of appellant, under the facts of this case, merely to allow such relationship to exist. In other words, the appellant was not guilty of negligence in not preventing the appellee's ward from becoming a licensee in the use of said path, even if he was such.

The placing of the pile of cinders across the path was a visible revocation of any license to use the path. Its presence was inconsistent with implied acquiescence in the continued  use of the path. In order to constitute such revocation, it was not necessary that such steps be taken as would render it wholly impossible for one to travel along the right of way, but the pile of cinders was an open, visible, and apparent interference with and obstruction to the further use of the path. If the appellant had erected a fence 12 to 30 inches high across the path, it would have been a revocation of a license to use the path. A pile of bricks of such height and so located would have obstructed the path, and operated as a revocation of the license. So this pile of cinders, forming a barrier across the entire width of the pathway, was obviously inconsistent with the continued use of the path, and was of itself a revocation of any prior-existing license to use it, and an evidence of a purpose on the part of the appellant to devote the property to other purposes inconsistent with its continued use as a path.

Under the circumstances shown, the appellee's ward was not a licensee at the time of the injury, and was, in law, a trespasser, and appellant's duty was only such as it owed to a trespasser. *Papich v. Chicago, M. & St. P. R. Co.*, 183 Iowa 601.

(2) The appellee, as a further ground of negligence, alleged that:

"The defendant carelessly and negligently impliedly invited and permitted the plaintiff's ward, he being an infant, into a place of danger, by the use and maintenance of said path and pond."

It is argued that, under this allegation, the "attractive-nuisance theory" is applicable to this case. There is nothing in the record to call for any application of the so-called "attrac-

tive-nuisance theory." The boy was not "attracted" to the place where the injury occurred by reason of anything that the appellant had done, or by reason of any condition which it had brought about, or which existed there. The boy was going on an errand, having been sent by his mother, to go to a store. He came to the place of the injury simply because he was following the path along the railroad track which he was accustomed to follow, and which was used by people generally who lived in that part of the city. Much is said in argument about the pond's containing frogs and flowers, and there is some evidence tending to show that, as the boy passed along, he threw a stone in the pond; but the pond itself was not shown to be any allurement or attraction to the boy that caused him to go *that* way or be in that place. He went that way on an errand to the store, not because the pond was there, but because it was the usual route to the store. The pond in no way injured him or contributed to his injury.

The same is true of the pile of cinders. They did not attract the boy to the place. He got on the pile of cinders to get out of the way of the approaching train; but it was not the presence of the pile of cinders that "attracted" him to the place. There was no ground in this case for the application of the "attractive-nuisance theory." See *Seymour v. Union Stock Yards & T. Co.*, 224 Ill. 579 (79 N. E. 950); *Blough v. Chicago G. W. R. Co.*, 189 Iowa 1256; *Massingham v. Illinois Cent. R. Co.*, 189 Iowa 1288.

(3) As a further ground of negligence, the appellee alleged that the defendant did not take reasonable precautions to guard and protect the boy from the danger which might reasonably be expected to overtake him while using the path.  The railroad track was visible to every pedestrian who used the path, and it was well and generally known, and was obvious, that the track was used for the operation of trains, which were upon the same with more or less frequency. The mere failure to "guard and protect" the appellee's ward by erecting obstructions or taking such steps, by barricades or otherwise, as would have rendered impossible the use of the path by the boy or the public generally, was not negligence. The appellant was not guilty of negligence

in failing to fence its tracks in the city. Nor was it negligence, under the proven facts, to fail to have a watchman posted at the place to exclude those who used the path, or to erect barriers to exclude persons using the path. For a review of the authorities, see cases supra; *Richards v. Chicago, St. P. & K. C. R. Co.*, 81 Iowa 426.

(4) The appellee further alleges that appellant was negligent in placing the pile of cinders in the path, and thereby impeding the movements of the child. There is no evidence to sustain the claim that the boy's efforts to escape were wrongfully impeded by the cinders. In fact, the evidence shows that there was room for the boy to have passed farther away from the train toward the pond, or to have remained in the path at the end of the pile of cinders. The evidence shows that the cinders had been in the path for approximately a month before the injury. There was, therefore, no such sudden change in the situation as brought about any new and unexpected condition. The appellant had the right to place the cinders upon its own property. They were an obstruction to the use of the path. But the pile of cinders was not inherently dangerous. It was not, for example, as though the appellant had dug a pit in the pathway and left it open and unguarded, and the appellee's ward had fallen into the pit and been injured by the fall. The pile of cinders did not injure the appellee's ward. Nor did they cause his injury by impeding his movements to a place of safety.

(5) Appellee alleged negligence in failing to properly warn the boy of the approach of the train. There is no basis in the record upon which the jury could have found the appellant  negligent under this specification. The boy's testimony is that he saw the train when it was two blocks away, and as it was approaching him. Even if the employees in operation of the train had seen the boy at a distance as they approached him, they would have seen no more than a seven-year-old boy standing or walking on the pile of cinders, facing the approaching train, in broad daylight. Certainly, under this record, a jury would not be warranted in finding that the appellant, under such circumstances, was negligent because it "failed to give any reasonable warning of its approach toward the child." The appellee's ward appears to be a bright and intelligent child, seven years of age, and clearly,

under the record, saw the approaching train at a distance of two blocks, and was in a position where the engine and several of the cars passed by him in safety. Any signals or warnings that might have been given of the approach of the train, it cannot be assumed would have changed the situation in the least, or have given to the child any other or different warning or information than he had from his own observation of the approaching train. There was no negligence at this point that could have sustained a verdict.

(6) The appellee, by his pleading, alleges negligence under the so-called "last-clear-chance doctrine." The record in this case did not present any situation calling for the application of the last-clear-chance theory. In the first place,  there is no evidence that could carry to the jury the question of actual knowledge on the part of the employees having charge of the train, of any obvious peril and danger to said child. In order for the last-clear-chance doctrine to be applicable, the evidence must be such that a jury could find that the persons operating the train knew of the danger of the injured party, and after knowing of such danger failed to use the instrumentalities in their hands to avoid the threatened injury. *Keefe v. Chicago & N. W. R. Co.*, 92 Iowa 182; *Bruggeman v. Illinois Cent. R. Co.*, 147 Iowa 187; *Bourrett v. Chicago & N. W. R. Co.*, 152 Iowa 579; *Carr v. Inter-Urban R. Co.*, 185 Iowa 872; *Claar Tr. Co. v. Omaha & C. B. S. R. Co.*, 191 Iowa 124; *Miller & Kizer v. Des Moines C. R. Co.*, 196 Iowa 1033. The evidence does not disclose that the employees of the appellant in charge of the operation of the train saw the appellee's ward before the injury, or knew of his presence. Under the rule in this state, the last-clear-chance doctrine had no application to the facts shown, and could not be the basis of recovery.

(7) Appellee alleged negligence in failing to check the speed of the train and give signal of its approach to a public street. The undisputed evidence shows that the injury did not  occur upon a public street, and there was no basis for this alleged ground of negligence under which any liability could be found. The injury did not occur on the public street, and there was

no relation whatever between the street and the accident. See *Hansen v. Kemmish,* 201 Iowa 1008, 1011, and cases cited.

(8) As another ground of negligence, the appellee alleged that the appellant was negligent in failing "to observe and look out for the presence of persons who might reasonably be expected to be upon said path and in a position of danger." Under the record in this case, there was no sufficient evidence to take to the jury the question as to whether or not the appellant was guilty of negligence in failing to keep a lookout for persons who might be near the track. Even if the jury should find that, under all the circumstances, due care and caution required that appellant's employees, in operating said train, should have kept a lookout, under the undisputed facts the failure to keep such a lookout could not be said to be the proximate cause of the injury to appellee's ward. If the appellant's employees had kept the most diligent lookout at the farthest distance down the track at which they could have observed the appellee's ward, they would have seen only a seven-year-old boy, standing or walking on the cinders outside of the track, and at such a distance therefrom that, under ordinary circumstances, the train would have passed without touching him or inflicting injury upon him. In fact, the undisputed evidence shows that the engine and a number of cars in the train did pass by the boy before he slipped and fell under the train. The failure, if such there was, to keep a lookout, could not be the basis of actionable negligence, under the facts shown.

(9) Another ground of negligence is alleged to consist in a failure to stop the train and remove appellee's ward to a place of safety. This ground of negligence as pleaded is predicated upon the theory that the appellant's employees knew, or were bound to know, that the appellee's ward, when standing or walking on the pile of cinders, was in a place of peril and danger, and that the movement of the train past the pile of cinders would jar the same in such manner as might reasonably be expected to cause the child to slip or slide therefrom, and that, knowing of such conditions, it was negligence on the part of the appellant's employees not to remove the child before moving the train past the pile of cinders. Even though it may be assumed, and the jury might find from the evidence, that the appellant's employees were

chargeable with notice of the existence of the pile of cinders, and that children living in that neighborhood passed over said pile of cinders in walking down the right of way, still there is no evidence in the record upon which, even under such circumstances, the appellant's employees could be said to be negligent in operating said train past said pile of cinders while the boy was there. There is no showing whatever with regard to the condition of the ground, whether it was soft and spongy or subject to jar. The child was at all times far enough removed from the side of the train so that there was no danger of collision with it, and there is no such showing of any facts as would charge the appellant's employees with negligence in failing to stop the train and remove the appellee's ward from a place beyond the line of collision, merely because he was standing or walking upon a pile of cinders at an apparently safe distance from the track. The case is distinguished from *Kansas City, F. S. & M. R. Co. v. Matson*, 68 Kan. 815 (75 Pac. 503). In that case it appeared that there was a pile of logs near a railroad track, and that children had been in the habit of playing upon said pile of logs, to the knowledge of the railroad company. It also appeared that the ground was of a loose, spongy character, and when heavy trains ran over it, the ground was shaken so that the children on the pile of lumber were liable to be shaken off. The plaintiff, a child of five years, while playing on the pile of lumber was shaken off by the movement of a passing train, and was injured. In that case, the testimony showed the dangerous location of the pile of wood; that the ground was susceptible to movement or jar from the passing of trains near it; that children had been allowed to play upon this pile of wood to the knowledge of the railroad company for a year or more. The court said:

"The wood pile, away from the tracks, would not have been dangerous in itself, but, when placed so near the track on loose ground, it became a dangerous place when trains were passing by. From the testimony it must be inferred that the company knew of the character of the ground and the jarring effect of trains in passing over it."

The instant case, however, does not present any such a situation. There is no showing whatever as to the condition of the ground or the effect of moving trains upon the pile of cinders.

In other words, there is, on the entire record, no such showing of negligence in moving the train past the pile of cinders while the boy was standing or walking thereon as would carry the question to the jury, and could be made the basis of recovery. A finding by the jury that, under the record in this case, the appellant was negligent in not removing the child from the pile of cinders before proceeding with the train could not have been sustained.

We therefore reach the conclusion that, upon the entire record as it stood at the close of all the testimony, the appellant's motion for a directed verdict should have been sustained by the trial court. This being true, it is unnecessary that we consider other errors alleged, and we make no pronouncement in regard thereto. The cause must be, and it is,—*Reversed and remanded.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.