LEWIS BATTIN, Administrator, Appellant, v. INEZ CORNWALL et al.,
Appellees.

No. 42265.

APRIL 3, 1934.

Silas B. Allen, for appellant.

Cornwall & Cornwall, and H. E. Narey, for appellees.

CLAUSSEN, C. J.—In September of 1931, defendants acquired the property on which, it is alleged, plaintiff's intestate met his death. The building formerly on the property was burned in June of that year in a fire which destroyed several business blocks in the town of Spencer. The property in question is in the middle of a block on the east side of Main street. At the time of the fire the building was used as a pool hall. Formerly it had been used as a garage. When thus used, entrance was had, with automobiles, through a wide door at the north side of the building and a driveway extended from this door along the north side of the building to the alley at the rear. When the building was converted into a pool hall, the arrangement of the concrete constituting the driveway was not disturbed, so, when the fire destroyed the building, unobstructed access could be had to the interior by walking up the incline of the driveway. The brick structure of the front wall was not destroyed by the fire, and it stood, at the time of occurrence in question, supported at the ends by the structure of the adjoining buildings and in the intervening space by two pillars or piers. At the south side of the building a recess or entryway had existed, which was seven or eight feet in depth. At the end of this entryway was a door opening on the stairway leading to the second floor, and on the north side of the entryway was a door leading into the pool room. The floor of the entryway was made of concrete. It was six or seven inches higher than the sidewalk. Inside the door opening on the stairway was a step or small platform, also made of concrete, which was seven or eight inches higher than the floor of the entryway. Under the windows in the building was a low brick wall. The fire destroyed everything combustible, and the result was that, except at the door leading into the pool room and at the former site of the driveway, access to the

floor of the building was obstructed by the low brick wall. At the end of the entryway the only obstruction was the cement step or landing platform. The first floor of the building was made of concrete, but notwithstanding this fact the fire caused the floor to cave in in places. In the front part of the building a basement had been excavated. Access to the basement was had by means of a stairway under the stairway leading to the second floor. When the building was burned, the stair wall, four feet wide and eight feet long, remained as an open hole in the concrete floor at the south side of the building and eight or nine feet from the front line of the building.

After the fire the pool hall was moved to temporary quarters on the east side of the alley at the rear of the building and some little distance either north or south of its old location. Subsequently the buildings on either side were reconstructed and ultimately the reconstruction of the building was begun. The steel beams to carry the second floor were placed in position, the front of the building was tied into the fronts of the adjoining buildings, and a considerable number of brick for use in the building had been piled on the floor. Still the hole in the first floor was left unguarded except for the cement step at the west end of the hole and possibly some steel beams which lay on the floor near its side. This was the situation when the body of plaintiff's son was found in the basement of the building.

Plaintiff is administrator of the estate of his deceased son, who was thirteen years old at his death. The unfortunate lad was last seen alive one Sunday night in October of the year 1931, at about 7:30 or 8:30 o'clock, in the immediate vicinity of the above-described premises. The boy did not return to his home that night and on the following Tuesday his lifeless body was found in the basement of the building under the hole in the first floor. The boy must have been alone when he fell through the hole, if that was the cause of his death, for no one seems to have known anything of him from the time he was last seen on the street until his body was found several days later. The mission which took him to his death is unknown.

This action is brought to recover damages for his wrongful death. At the close of plaintiff's evidence a motion for a directed verdict made by defendants was sustained by the court.

During the trial plaintiff asked leave to amend his petition for the purpose of making the pleadings conform to the proofs by alleging in effect that the building was an attractive nuisance. The court refused to permit the amendment and plaintiff complains of

this. We think the court properly denied the amendment. Underlying the attractive nuisance doctrine is the thought that the defendant has maintained something which is dangerous and attractive to children in an accessible place. In such a situation it is not a defense that the thing so maintained is situated on property owned by the defendant, in consequence of which, under ordinary circumstances, the injured person would be a trespasser. It has been said that the maintenance of the thing is an invitation to the immature to enter upon the premises. Wilmes v. C. G. W. R. Co., 175 Iowa 101, 156 N. W. 877, L. R. A. 1917F 1024; Edington v. B., C. R. & N. R. Co., 116 Iowa 410, 90 N. W. 95, 57 L. R. A. 561; McKiddy v. Des Moines Electric Co., 202 Iowa 225, 206 N. W. 815. It is, of course, obvious that before plaintiff can derive anything from the attractive nuisance doctrine, it must appear that defendants' premises were attractive to children and that his intestate was attracted to the premises and met his death as a result. It need not be said that the hole in the floor was dangerous. It was obviously dangerous. But there is nothing in the record to suggest that the premises were attractive to children. There is no evidence that children were attracted to the premises or that children resorted to the premises for the purpose of play. There is evidence that on account of the driveway on the opposite side of the building, the building furnished a convenient "short cut" for persons who wanted to go from Main street to the property situated along the alley to the east of the building. Adults and children used the driveway for that purpose. The men who worked upon the reconstruction of the adjoining premises also went back and forth through the building, but as before said there is nothing about the situation which suggests that the structure had any attraction for children. It was not attractive, it was a convenient "short cut". In this respect the case is ruled by Radenhausen v. C., R. I. & P. Ry. Co., 205 Iowa 547, 218 N. W. 316. See, also, Nelson v. Lake Mills Canning Co., 193 Iowa 1346, 188 N. W. 990; Davis v. Bonaparte, 137 Iowa 196, 114 N. W. 896; Reese v. Kenyon Co., 198 Iowa 1015, 200 N. W. 600. The building to the south of the premises was used as a theater. Plaintiff argues that defendants were charged with knowledge of the fact that children would naturally loiter near the theater and were quite likely to play in the building then in the process of reconstruction. This does not aid plaintiff, for there is no evidence that the boy ever played in the building or that other chil-

dren played in the building, or that the boy came to his death while playing in the building.

Before the hole could be a source of danger to anyone, it would be necessary for him to take the step from the sidewalk up onto the entryway and then walk eight or nine feet to the cement step at the west end of the hole, or it would be necessary for him to crawl over the low wall and then wander over the intervening distance to the hole. It is, of course, true that one could enter at the location of the old driveway on the north side of the building, but in that event he would have to traverse the width of the building before reaching the hole. No one could fall into the hole without consciously leaving the sidewalk and entering the building, then in the process of construction.

■ The only theory on which the boy could be other than a trespasser is that the use of the premises as a "short cut" to the alley was so general and so known to the defendants that persons using the premises for that purpose would be licensees. The defendants had owned the premises only slightly longer than a month, at the time of the boy's death. Whether they actually knew of the use of the property as a "short cut" is not disclosed by the record. Whether the use of the premises was so general as to charge defendants with knowledge of its use is the subject of very serious doubt. The record does not disclose where the defendants lived with reference to the property, or what their means of observation of the property were. Walking on the concrete floor would not leave paths or like evidence of use. Repeated trespasses alone or trespasses by many do not ripen into license unless attended by circumstances showing knowledge and acquiescence or of such a character as to charge the owner with knowledge. Fischer & Knorr v. Johnson Lane & Co., 106 Iowa 181, 76 N. W. 658; 45 C. J. page 793, section 195 et seq. But even though defendants may have been chargeable with notice that the premises were used as a "short cut" plaintiff would not be entitled to recover. Wilmes v. C., G. W. R. Co., 175 Iowa 101, 156 N. W. 877, L. R. A. 1917F 1024. With the elimination of the attractive nuisance rule from the case goes every possibility of recovery by plaintiff, for then the decedent was either a trespasser or a bare licensee. Defendants owed no duty to maintain the premises in a safe condition to the decedent in either of such capacities. In Wilsey v. Jewett Bros. & Co., 122 Iowa 315, 98 N. W. 114, this court said:

" * * * it may be stated as a general rule of law that the owner or occupier of real property is under no obligation to make it safe or to keep it in any particular condition for the benefit of trespassers, intruders, mere volunteers, or bare licensees, coming upon it without his invitation, express or implied." Burner v. Higman & Skinner Co., 127 Iowa 580, 103 N. W. 802.

Plaintiff relies on Murphy v. C., R. I. & P. R. Co., 38 Iowa 539; Clampit v. C., St. P. & K. C. R. Co., 84 Iowa 71, 50 N. W. 673; Thomas v. C., M. & St. P. R. Co., 103 Iowa 649, 72 N W. 783, 39 L. R. A. 399; Tarashonsky v. I. C. R. Co., 139 Iowa 709, 117 N. W. 1074; Connell v. Keokuk Electric R. & P. Co., 131 Iowa 622, 109 N. W. 177; and Ambroz v. Cedar Rapids E. L. & P. Co., 131 Iowa 336, 108 N. W. 540, and similar cases. These cases are readily distinguishable from the case before us. In these cases the plaintiffs were bare licensees upon the property of defendants. In every instance the plaintiffs were injured through negligent acts of the defendants or their employees subsequent to plaintiffs coming upon the premises. None of the cases are concerned with the question whether the owner of property must make it safe for use by a trespasser or a bare licensee. The action of the trial court in sustaining the motion for a directed verdict finds abundant support in the decisions of this court. Wilmes v. C. G. W. R. Co., 175 Iowa 101, 156 N. W. 877, L. R. A. 1917F 1024; Printy v. Reimbold, 200 Iowa 541, 202 N. W. 122, 205 N. W. 211, 41 A. L. R. 1423; Keeran v. Spurgeon Mercantile Co., 194 Iowa 1240, 191 N. W. 99, 27 A. L. R. 579; Davis v. Malvern Light & Power Co., 186 Iowa 884, 173 N. W. 262; Reese v. Kenyon Co., 198 Iowa 1015, 200 N. W. 600; Papich v. C., M. & St. P. R. Co., 183 Iowa 601, 167 N. W. 686.

The judgment of the trial court is affirmed.—Affirmed.

EVANS, ALBERT, KINDIG, DONEGAN, and KINTZINGER, JJ., concur.