ADRIAN HART, by NELLIE HART, his next friend, Appellee,
v. THE MASON CITY BRICK and TILE COMPANY,
Appellant.

**Negligence:** PROXIMATE CAUSE. To charge the owner with legal
liability for the injury of one upon his premises it must be
shown that he was guilty of negligence and that such negligence
was the proximate cause of the injury.

**Same:** DANGEROUS MACHINERY: INJURY TO STRANGER: LIABILITY. The
owners and proprietors of shops and factories may be liable for
negligence by exposing and leaving in an unguarded condition
in an open or public place dangerous machinery likely to attract
children, where their presence may be known or reasonably ap-
prehended; but such owners or proprietors are not precluded from
the right to use their appliances and machinery in their own build-
ings and upon their own premises as may best serve their advan-
tage, and when neither expressly inviting children to enter there
or to put themselves in a place of danger they will not be liable
for an injury not wantonly inflicted.

**Same:** DUTY TO GUARD MACHINERY: WANTON CARELESSNESS: EVIDENCE.
In this action for injury to a boy while playing upon defendant's
premises the evidence is held insufficient to show such permission
or indulgence of the boys in and about the place as to charge
defendant with the duty to lock its doors and guard its machinery;
or to show wanton or reckless starting of the machinery with
knowledge that the plaintiff was in a place of danger.

*Appeal from Cerro Gordo District Court.*—HON. C. H.
KELLY, Judge.

FRIDAY, APRIL 5, 1912.

ACTION at law to recover damages for a personal in-
jury. There was a judgment for the plaintiff and defendant
appeals.—*Reversed.*

The facts are stated in the opinion.

*Cliggett, Rule & Smith,* for appellant.

*Ontjes & Law* and *D. W. Telford,* for appellee.

Weaver, J.—The defendant corporation is a manufacturer of brick and tile at Mason City, Iowa. The grounds occupied by the plant have an area of nearly twenty acres, extending about eighty rods east and west and thirty-five rods north and south. Near the center of this tract are situated the buildings made use of in carrying on the business; among these structures, a detailed description of which is unnecessary for the purposes of the appeal are a large dryer, a machinery room, a boiler room, an engine room and coal room, standing upon the west side of a railway track which has been laid for the accommodation of the factory. On the east side of the track is a building known as "the old blacksmith shop," and ten feet south thereof is the "new shop." A door in the south end of the old shop opens upon the alley between these buildings. In the old shop, and about twenty-eight feet from the south end thereof, is a horizontal shaft of iron or steel, by the aid of which power was applied to the operation of certain fans. This shaft rests on bearings about five feet above the floor. This room is also connected with an oil room to which employees have frequent occasion to go in the course of their employment. No particular work was then being carried on in the room containing the shaft, but workmen frequently entered it to reach the oil room, and for other temporary purposes, and, when work was in progress in that vicinity, the door opening upon the alley was frequently, if not usually, left open. This alley was much frequented by the workmen, and at times at least persons not connected with the business made use of the passage in crossing the premises of the defendant. Among the persons so passing with more or less frequency were boys who sometimes loitered and played in that vicinity, but the extent of this practice

is a matter of dispute in testimony. Sometimes the boys passed through the open door of the old blacksmith shop, and amused themselves by hanging upon and sliding along the smooth revolving shaft. There is no direct or positive testimony, however, that this practice was known to or permitted by the defendant or its agents in charge of the premises.

On the day of the accident in question the plaintiff, a boy then in his eleventh year, with others, went into the old shop through the open door and played upon the shaft. In so doing the clothing of the plaintiff was in some manner wound upon the shaft, and, before help could be obtained for his release, he sustained very serious injury. To recover compensation for the damages so occasioned this action has been brought. The defendant is charged with negligence in leaving an open and unobstructed entrance to the shop, containing dangerous machinery of a character likely to attract children, and in permitting children to there resort as a place to play, and in the further fact that upon the revolving shaft above mentioned there was an unguarded set screw upon which plaintiff's clothing was caught binding him to the shaft, and preventing his escape from injury. The allegations of the petition charging negligence are denied by the defendant. The issues were tried to a jury. At the close of the testimony, defendant moved for a directed verdict in its favor on the ground that the evidence was insufficient to support a recovery of damages. This motion was overruled, and, the cause having been submitted to the jury, a verdict was returned for plaintiff in the sum of $1,000. From the denial of its motion for a new trial and from the judgment on the verdict, the defendant has appealed.

Very numerous errors are assigned and argued as grounds upon which a new trial should be ordered. Most of these we think it unnecessary to discuss except as they are involved in the general question concerning the sufficiency of the evidence to sustain the verdict.

That plaintiff was injured upon the defendant's pre-
mises is not denied, but this alone has no tendency to
charge the defendant with legal liability for
the damages so suffered. To impose such
liability, it must be shown that defendant
was negligent, and that such negligence was the proximate
cause of the injury.

1. NEGLIGENCE:
   proximate
   cause.

The appellee plants his case upon the doctrine affirmed
by us in *Edington v. Railroad Co.,* 116 Iowa, 410, and in
other cases of that type which are usually spoken of as the
"turntable cases." This court has no dis-
position whatever to overrule that precedent
or to deny its application to any case coming
fairly within its reason and principle, but the
principle can not be so extended as to deny to owners and
proprietors of factories, shops, and places devoted to the
varied forms of industry their natural and legal right to
make use of the same to the best advantage, subject of
course, to the fundamental rule that each person must use
and enjoy that which is his own in a manner to avoid in-
jury to others. The cases to which counsel refer involve
for the most part an act of negligence in exposing and leav-
ing in an unguarded condition dangerous machinery of a
character likely to attract children in an open or public
place where the presence of children is known or may rea-
sonably be apprehended. The recklessness, if not wantonness
of such conduct, is too apparent for argument, and liability
imposed for injuries so resulting is manifestly just. But
a manufacturer who places machinery in his own building
upon his own premises, and neither expressly nor impliedly
invites children to enter there, or to put themselves in a
place of danger, is not open to any such imputation of
blame. This distinction was recognized by us in *Brown v.
Canning Company,* 132 Iowa, 631. There a boy of seven
was injured by machinery in a canning factory. He enter-
ed the room where the machine was installed, not upon any

2. SAME: danger-
   ous machinery:
   injury to
   stranger: lia-
   bility.

business errand, but in pursuit of play, or as a matter of idle curiosity, and, coming in contract with some of the machinery which was there in operation, he was injured. There, as here, plaintiff relied upon the turntable cases; but we said: "The facts of this case do not bring it within any such rule, nor are they so far analogous that in reason the same principle should be applied to them. The machinery was not in an open lot unattended, but was in an inclosed building into which it could be reasonably supposed no one would come without proper occasion. It was not negligently left unguarded, for the superintendent of the defendant and other employees were about the building, and some of them had warned boys away from the machinery. It was not negligently left unlocked or unfastened, for it could not have been locked or fastened without interfering with its legitimate and proper use. It was not operated by the children as a plaything, but was set in motion for a legitimate purpose by means of power furnished from the main building." We think the rule of the turntable cases is therefore not applicable.

For the reasons stated, the plaintiff was not permitted to recover. The record before us presents an issue which comes well within the rule of the *Brown* case, and we think it must govern our disposition of the appeal. Of course, if there was any showing that the defendant or its employees or agents in charge of the factory had invited the boys into the dangerous place, or even if they knowingly permitted the boys to make use of it as a playroom and to play upon or about the shaft, a very different case would be presented, but we discover no testimony upon which such a finding could be upheld. That boys attending school in that vicinity did use the path or way across defendant's premises is quite clear, as is also the fact that they played more or less about the brickyard, and sometimes entered the building or rooms and watched the work there being car-

3. SAME: duty to guard machinery: wanton carelessness: evidence.

ried on; but that defendant knowingly permitted them to make use of these buildings or rooms as places for play or indulged the boys in meddling with the machinery is nowhere shown. It is true that one or two employees testify to seeing boys loitering or playing in that old shop, but neither of these witnesses had any authority in the premises. The foreman, Olson, who was in the more immediate charge of the work in that vicinity, denies any knowledge of such habit, and swears that he often warned the boys away. In this he is corroborated by witnesses, both for the plaintiff and defendant. There is no evidence impeaching this denial by Olson, except the statement of some of the boys that on one or two occasions, when in the shop, they saw Olson passing by, and as he passed he looked, or "just glanced," in their direction, a statement which is by no means inconsistent with the truth of his assertion. It also appears without dispute, and is admitted by some of the boys, that employees of the defendant had warned them away from the shops, and one of them says he had been driven out of this particular shop by Olson. In short, there has been no such showing of facts as would justify a finding by the jury that defendant had so far permitted or indulged the boys in loitering or playing about the machinery of the shops as to charge it with the duty of locking its doors or guarding its machinery against their approach. The fact that they were permitted to use the path across the premises or to play about the brickyard constituted neither invitation nor license to enter the buildings, or to interfere with any of the machinery therein. It would require an extraordinary situation to charge the defendant with negligence in allowing the door of the shop to stand open.

In this shop, as we have seen, was the entrance to the oilroom. It was also used as a sort of storage room, where certain supplies or extras were kept. There was also a grind stone upon which tools were sharpened. Workmen

were necessarily passing in and out very frequently, and it was both natural and proper that the door should stand open. The building was upon defendant's own premises. It was entitled to make use thereof in such manner as it conceived would best facilitate its business, and, aside from its liability to its own employees and others rightfully entering the building, the fact that its doors were left ajar or its windows unbarred, or its revolving shafts were uncovered or the set screws thereon were unguarded, is of no material significance. This is certainly true, unless it be shown that the manner in which defendant's factory had been conducted was such as to amount to an implied invitation or license to plaintiff to enter the shop and expose himself to danger of the injury which he received, and in our judgment no fact is disclosed in evidence from which such implication can be derived.

Still less is there any evidence to charge defendant with knowledge that plaintiff was in a place of danger, and that, with such knowledge or with knowledge of facts giving rise to such reasonable apprehension, it wantonly or recklessly set the machinery in motion, regardless of plaintiff's safety. The law is solicitous to promote the safety of human life and limb and to protect from serious harm children whose tender years and inexperience render them more or less incapable of self-protection, but in attaining these desirable ends due regard must be had to the rights of others. The ownership of property and the conduct of industrial enterprises should not be penalized by the imposition of liability for injuries which are not the result of any breach of duty by the proprietor or by those for whose conduct he is in any manner responsible. There is here no showing of a duty on the part of defendant to guard its blacksmith shop against the uninvited and undesired entrance of the plaintiff or of boys in general, and we think a verdict should have been directed in its favor.

As this conclusion sufficiently disposes of the appeal,

we shall not undertake the discussion or decision of other points made by counsel.

For the reasons stated, the judgment of the district court is *reversed*.