VERNIE SMITH, Appellant, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellee.

NEGLIGENCE:   Attractive Nuisance—Dump Grounds—Smouldering Fire.   A dump ground, *used exclusively for that purpose,* and a smouldering fire some 18 inches across, without any blaze, at the foot thereof, situated some 20 or 25 feet from a public street, with a railing along the street as far as the tracks of a railway will permit, do not constitute such an attractive and dangerous object as to permit of application to the case of a trespassing child, injured by burning, of the law governing attractive nuisances.

*Appeal from Cherokee District Court.*—GEORGE JEPSON, Judge.

THURSDAY, JUNE 29, 1916.

SUIT brought by Vernie Smith to recover damages alleged to have been caused by his being burned in a fire on a dump ground in the yards of defendant company at Cherokee, Iowa. There was a trial to a jury. Defendant introduced no evidence. At the conclusion of plaintiff's testimony, the trial court directed a verdict for the defendant. Plaintiff appeals. —*Affirmed.*

*Claud M. Smith*, for appellant.

*Molyneux & Maher* and *Helsell & Helsell, Blewett Lee* and *W. S. Horton*, for appellee.

Preston, J.—The petition alleges, in substance, that plaintiff is a minor about four years of age; that, for some months and during the summer of 1914, defendant kept and maintained in its railway switch yards at Cherokee, Iowa, and at a point about 15 feet north of the sidewalk on the north side of Cherry Street, and between the Sioux Falls and Sioux City branches of its main right of way in said city, a dump, upon which the defendant, through its employees, threw and piled the waste paper, straw, hay and other refuse and accumulations that usually and generally accumulate in a railway terminal station yard, and for two weeks previous to August 15, 1914, caused, permitted and allowed a fire to be and exist in said pile of refuse matter; that said fire was kept up and maintained and kept burning in said pile of refuse matter as aforesaid on said 15th of August, 1914, on which date the plaintiff, while passing along and over the sidewalk on said Cherry Street, in close proximity to said smouldering fire, was attracted by said fire, which fire was an attractive nuisance, and, while he was so attracted to the edge of the bank overlooking said smouldering fire, the bank beneath the feet of plaintiff gave way and caved in, and the body of plaintiff was caused to roll down said embankment and into and upon said smouldering fire, and plaintiff was burned. The answer was a general denial.

NEGLIGENCE: attractive nuisance: dump grounds: smouldering fire.

The case was tried upon the theory that the fire constituted an attractive nuisance. The dump was about 12 feet high. The fire was at the bottom of the dump. The claim is that it had been burning there from 8 to 10 days, and some of the witnesses put it that it had been burning there more or less the greater part of the summer. The testimony

is that there was no blaze, and that the space where it was burning or smouldering was about 18 inches across; that, on or about the 15th of August, plaintiff, in company with an older brother seven years of age, started from their home about a block from the scene of the injury and walked a block to the north side of Cherry Street on the sidewalk, going up in another part of the city to play, and, at the point on the sidewalk opposite the fire on defendant's premises, plaintiff's claim is that they were attracted to the scene, and plaintiff went too close to the edge of the dump and it caved in with him and he rolled to the bottom and into the smouldering fire.

We shall set out somewhat fully the testimony of plaintiff's father and the other witnesses whose description of the premises is illustrative of the other testimony. After stating that there is no permanent disfigurement of the child, plaintiff's father says:

"The fire was between the Sioux Falls and Sioux City tracks, north of Cherry Street, in the city; it was 15 or 20 feet north of the Cherry Street sidewalk, in my judgment. There is a high bank there, perhaps 12 feet high. There are bridges near this track, about 30 feet from the sidewalk. Each bridge crosses that little creek. There is a dump between the two bridges north of the sidewalk from Cherry Street and between the two tracks. The bank is made of cinders, I think. The company dumped rubbish there over that bank during August, 1914; it was cobs and rubbish they picked up around the yards, paper, straw and hay. I saw men whom I thought were section men dumping rubbish there during the summer, but I don't know that they were section men. I do not know where the rubbish came from. There was no walk of any kind out onto the dump; the path just leads to the bank, and then there is this strip of 12 feet between the bridges and it is not used by anyone to get anywhere. One branch of the railway goes west to Sioux City, and the other goes northeast to Sioux Falls and forms a triangle there. Down beyond the dump is a low place that the creek crosses by the two railroad

bridges, and there are no buildings down there of any kind; it is a low spot used for no other purpose.''

Other testimony shows that the sidewalk there runs east and west over the railroad track, and along the sidewalk going west, there is a level space up toward the track about 18 to 20 feet wide, from the sidewalk up to the approach of the bridge; there is nothing dumped there, and it is all level. A railing along the sidewalk runs up to within a few feet of the track running to Sioux Falls. The level space is near the track running to Sioux City. There is a railing along the sidewalk east and west. The pile of rubbish extends out 20 or 25 feet from the sidewalk. The railing between the dump and the sidewalk runs up close to the tracks on each side. The rail extends as close to each track as it is practical to put it and still let the cars go by. This dump is a vacant spot not used by anyone, only as they dump stuff over it down to the creek bottom, where the creek overflows once in a while. Witness says:

''I should say it was 10 or 12 feet down there. It is much lower than the walk below, the sidewalk. It is flat up on top where they dump it in. It is bushes and weeds and shrubbery down below on the creek bottom. The level space is separated from the sidewalk by a railing and posts made of 4 x 4's. There is a fence leading down from the right of way fence, from the track down. There is no driveway or walk down there in this rough bottom.''

This witness could not tell the exact distance the fire was from the sidewalk, but stated that it was probably 25 feet across the top of the dump, and then down to the bottom of the slope would be 12 or 15 feet more.

The brother of plaintiff testified that plaintiff was injured about 8 o'clock in the morning; that they were going up some place to play with some boys. They went up the sidewalk. He says:

''Vernie stopped to look at the fire, and it kind of caved;

he got too close to the side, to the edge of it.   There was a fire there that morning down below the bank.''

Witness did not go out on the bank, but Vernie walked out on the top of the bank and got on the edge of it, and it caved in and he rolled down the bank.   Witness says that the fire was not blazing at all, just a little smoke coming up; that it was down at the bottom of the hole.   Witness continues:

''You couldn't see the fire from the sidewalk very good. My mother knew I was going to play with the boys, but she didn't know Vernie was going; she told him not to go, but he went anyway.   In going to these boys' house, we went across the tracks and along the sidewalk.   I saw the rail between me and the fire when I stopped.   I went out of my way when I went out on this dump.   It wasn't on the way to the boys'; it wasn't the way anywhere and we weren't going anywhere there.   I told Vernie to keep back from the bank; I told him not to go out there, but he went out anyway.   I have gone out on the edge of that bank as far as Vernie did, but it didn't seem to cave in with me.   He got over too near the edge.   The dirt was soft there and he tumbled down.   There was no one near to push him and nothing to attract his attention; he just got too close to the edge.''

It will be seen from the testimony that the place was a natural dumping ground; that it was used for no other purpose; that it was not a playground; that there were no paths across or near it, except the sidewalk along the street, which was guarded and separated from the dump by the railing; that the place was a ravine, rough, unoccupied and unused, and that the fire, which plaintiff claims was an attractive nuisance, and which was located on the far side of the smooth top of the dump, which was 20 to 25 feet across, and in addition was at the base of the slope some 12 to 15 feet below, was a small smouldering spot not to exceed 18 inches across; that the premises were guarded by a railing extending as close to the track as it was practicable to put it and still let the cars go by.   Under the pleadings and evidence, no question

arises out of a failure to guard the premises. It is conceded that plaintiff was a trespasser.

The cases relied upon by appellant are some of those referred to in *Edgington v. Burlington, C. R. & N. R. Co.*, 116 Iowa 410, turntable cases. The theory, as we understand it, of the turntable cases, is that they are dangerous if left unguarded and in a place where children are known, either actually or constructively, to be in the habit of playing or going. As some of the cases put it, an attractive nuisance is something that has a peculiar attraction, and where there is some special or latent danger, and an unguarded condition, and it is located where children are known to frequent. None of these conditions or elements exist in the instant case.

The distinction between the right of owners of property to make use of the same to the best advantage, subject to the rule that they must use and enjoy it in a manner to avoid injury to others, and the doctrine of attractive nuisance, is well pointed out in *Hart v. Mason City Brick & Tile Co.*, 154 Iowa 741, at 744, 745. Appellant cites a large number of cases to sustain his proposition. But, under the facts in this case, plaintiff may not rely upon the claim that the dump and fire constituted an attractive nuisance. We shall not refer to any considerable number of the cases cited. In addition to the *Hart* case, supra, he cites *Brown v. Rockwell City Canning Co.*, 132 Iowa 631; *Schmidt v. Kansas City Distilling Co.*, 90 Mo. 284 (59 Am. Rep. 16); *Etheredge v. Central of Georgia R. Co.*, 122 Ga. 853; *American Advertising Co. v. Flannigan*, 100 Ill. App. 452; *Paolino v. McKendall*, 24 R. I. 432 (96 Am. St. Rep. 736); *Erickson v. Great Northern R. Co.*, 82 Minn. 60 (83 Am. St. Rep. 410); *Coleman v. Robert Graves Co.*, 39 Misc. 85 (78 N. Y. Supp. 893); *Twist v. Winona & St. P. R. Co.*, 39 Minn. 164; *Kayser v. Lindell*, 73 Minn. 123. See, also, recent case of *Wilmes v. Chicago, G. W. R. Co.*, 175 Iowa 101.

It is quite clear that plaintiff has not brought his case within the rule contended for by him.

Our conclusion is that the action and judgment of the trial court were right, and the judgment is, therefore,—*Affirmed.*

EVANS, C. J., DEEMER and GAYNOR, JJ., concur.