N. E. NELSON, Appellant, v. LAKE MILLS CANNING COMPANY, Appellee (two cases).

**NEGLIGENCE:** Acts Constituting—Nonattractive Nuisance. It is not negligent for a factory owner to maintain on his premises an unguarded opening in a wall under a building adjoining a driveway,

when the opening is of a size sufficient to enable a small child to crawl through and under the building and come in contact with hidden machinery.

*Appeal from Winnebago District Court.*—C. H. KELLEY, Judge.

JUNE 23, 1922.

ACTIONS at law, to recover damages on account of the death of Kenneth Norman Nelson. There was a trial to a jury, resulting in a directed verdict and judgment for the defendant in each case, and plaintiff appeals. The material facts are stated in the opinion.—*Affirmed.*

*Duncan Rule* and *Kingland, Dakin & Thonn,* for appellant.

*Senneff, Bliss, Witwer & Senneff,* for appellee.

WEAVER, J.—Kenneth Norman Nelson, a minor child of six years, son of N. E. Nelson, residing in the town of Lake Mills, Iowa, met his death under circumstances substantially as follows: In Lake Mills is a street known as Park Avenue, extending north and south, and intersecting the right of way of the Minneapolis & St. Louis Railway. Immediately south of the right of way and on the west side of Park Avenue, the defendant owns a lot, fronting 167 feet on the avenue and extending to the west 305 feet. On these premises the company maintains and operates a canning establishment. The main building, 48.6 feet in width and 204 feet in length, stands immediately adjacent to the railway grounds. Adjoining the main building on the south is a driveway or passage 25 feet wide. Extending along the south side of the driveway is the company's office, standing about five feet from the sidewalk. West of the office is a water tank, and to the west of the tank is a building known as the husking shed, 144 feet in length and 36 feet in width. Just south of the office is a platform scale, from which another driveway, 15 feet wide, extends along the south side of the husking shed, to what is known as the dump house. Customers arriving with loads of corn drive in from the avenue to the plat-

form scale, and thence up a grade to the floor of the dump house, about five feet above the ground level. Under this elevated floor was a conveyor, into which the unhusked corn was dumped from wagons in which it was delivered, and thence by an endless belt or chain carried across and over the driveway into the husking shed. From the driveway there was an opening into the space under the floor where the conveyor was located. The size of the opening is the subject of some discrepancy in the evidence, but it was sufficient to afford a view of the conveyor when in operation, and to permit a child to crawl or climb through it. The operation of the conveyor was effected by the use of a gasoline motor, and controlled by a lever in charge of an employee on the dumping floor. In the operation of the plant, the husks and other refuse were accumulated in a heap at the extreme west end of the company's premises. This waste product was, to a considerable extent, and with the company's consent, made use of by people living in the neighborhood, as feed for domestic animals and poultry, children being often employed in hauling it away in their play wagons to their several homes. This husk pile was reached from Park Avenue by making use of the driveway by the side of the dump house. Among the children making use of the privilege thus afforded were the two young sons of the plaintiff herein. The older of these boys, Victor, was nine years old, and the younger, Kenneth, six years old. On the day in question, the lads had hauled home a load of husks on their coaster wagon, and at the request or direction of their mother, returned to the canning plant for another supply. As they reached the opening under the dump house, the conveyor was not, at the moment, in motion. The only eyewitness of what followed is the boy, Victor, whose testimony is abstracted by the appellant as follows:

"I am nine years old, and live in Lake Mills, Iowa. I remember one time last September when I was down to the canning factory with my brother, Kenneth, and Harold Lund; that I went down there after corn with my brother; and that we had a coaster wagon with us; that we went to the husking pile and filled it with husks, and took it home and went back after another load and filled up the wagon again, and then started home

on the road south of the dump shed; that we stopped by the dump shed; that, when we stopped by the dump shed, my brother Kenneth crawled in under the shed; that I told him to get out; but that he didn't hear us; that the Lund boy stayed outside; that Kenneth went in on the east side, near where the conveyor belt was; that the belt was not running; and that there was no corn on the belt.''

The same witness, on cross-examination, testified as follows: That it was after school when he went down there, and that they went down after corn, and while coming out, stopped by the dump shed; that his brother Kenneth crawled up over the wall and got into the building; that he did not help him crawl up there; that he did not walk inside under the building, but crawled right through; that he didn't see him, just after he had crawled over the wall; that he did not get up on a little box and crawl upon the corn conveyor; that he did not walk any, after he got under there; that there was no box under the dump shed, except a big box with stuff in, and that he did not step on that; that he saw him after he got up in there, just when he got caught; that his head was higher than the conveyor belt; that the chain conveyor ran in on the east, and under the dump shed, and that Kenneth climbed in at the east end; that he would not have to walk any distance to get to the chain; that his brother climbed in right by the chain. On cross-examination, he testified that he saw Kenneth when he crawled up into the conveyor; that the other boy that was with them told him to get out, and he did not hear it; that the conveyor belt was then started, and caught Kenneth; and that he tried to get out, but that the conveyor came around over his head and hit him.

On the theory that the death of the unfortunate child is chargeable to the negligence of the defendant, the plaintiff brings an action in his own right for the recovery of damages; and as administrator, he brings another action, to recover damages in favor of the estate of the deceased.

By agreement of the parties, the issues were consolidated, for the purposes of the trial. At the close of the testimony on part of plaintiff, the trial court sustained a motion by the defendant for a directed verdict in its favor, because of the in-

sufficiency of the evidence to support a recovery of damages. From this ruling and the judgment rendered on the verdict, the plaintiff has appealed.

The theory on which the appellant charges negligence is that the defendant did not use due care to close or guard the opening through which the deceased gained access to the space under the dumping floor; that said unguarded opening was in the nature of an invitation or temptation to an inexperienced child to crawl through it, thereby exposing such child to contact with dangerous machinery, and creating what is commonly designated as an "attractive nuisance." It is further charged, in substance, that defendant negligently permitted its premises and driveways to be made a playground for children, thereby licensing or encouraging their presence on and about its place of business, and thus encouraging the young and inexperienced to congregate there for the purposes of sport, or to gratify their natural curiosity by venturing into dangers the perils of which they are too young to appreciate. In short, it is the appellant's contention that the case thus presented is within the class of which *Edgington v. Burlington, C. R. & N. R. Co.*, 116 Iowa 410, *Fishburn v. Burlington & N. W. R. Co.*, 127 Iowa 483, *Powers v. Harlow*, 53 Mich. 507, *Indianapolis, P. & C. R. Co. v. Pitzer*, 109 Ind. 179, 183, *Harriman v. Railway Co.*, 45 Ohio St. 11, *City of Pekin v. McMahon*, 154 Ill. 141, and *Hydraulic Works Co. v. Orr*, 83 Pa. 332, are illustrative examples.

This proposition is denied by the appellee, who argues that the undisputed evidence in the case brings it, as a matter of law, within the rule applied by this court in *Brown v. Rockwell City Can. Co.*, 132 Iowa 631, 634; *Anderson v. Fort Dodge, D. M. & S. R. Co.*, 150 Iowa 465; *Hart v. Mason City B. & T. Co.*, 154 Iowa 741. On the question of law thus raised, this appeal must turn. Except in a few minor matters of detail, there is no substantial controversy over the material facts. This court has no disposition to abandon or discredit the position taken by it in the *Edgington* case and others in which that precedent has been followed. To class an irresponsible child, without experience or discretion, as a trespasser, to whom a property owner

owes no more duty of care or protection than he is required to exercise toward a person of adult years, presumably capable of caring for himself, is too inhuman and too repugnant to an enlightened sense of justice to command our adherence or respect. On the other hand, the necessities of business and the promotion of industrial pursuits are such that, practically speaking, every line of human employment or enterprise is attended with some degree of danger to life or limb. This is especially true in the maintenance and operation of mills, factories, shops, and plants where machinery is installed and used. Protection against injury to persons in and about such places may be, and usually is, to a material degree attained by the use of guarding devices; but danger of injury therefrom is never entirely removed. The obligation of the proprietor of such a place is one of reasonable care for the safety of his employees and of those whose entrance he expressly or impliedly invites; and ordinarily, if one not so authorized or invited does enter, such person takes upon himself the risk of injury. In other words, if he be injured under such circumstances, the proprietor will not be chargeable with fault, simply because of his failure to equip his machinery with suitable guards. Concerning the modification of this rule in favor of children of tender years, it may be said that the cases most frequently cited recognizing such liability are those in which the property owner creates or establishes a dangerous instrumentality, of a character to attract or invite immature children to meddle or play with it, and leaves it open and unguarded in a place where he may reasonably expect it to challenge the attention and interference of children. Such conduct is, in a sense, an invitation to the child, luring it into peril which a slight degree of care on the part of the property owner may easily avoid. Failure on his part to exercise such care is, to say the least, a breach of social duty, and there is no injustice in making him answerable for the resulting injury. But the reasons for applying such rule are not shown to exist in the instant case. The machinery by which the child was injured was not open or unprotected, nor so placed as to invite his interference with it. It was inclosed by the four walls of the shallow basement or space under the dump

house, and wholly covered by the building resting on those walls. True, there was a small opening into the basement through which one could look and see the conveyor, and large enough for the child to crawl into; but, as far as appears, there was in the space under the floor nothing with which he was playing or for which he was looking. The complaint stated in the petition and repeated with emphasis in the argument is not so much that the defendant was negligent with respect to the conveyor itself, but that defendant's fault was in leaving the hole in the wall open, and thus enabling the child to get through into the space under the floor. The allegation in the petition is that the hole was "carelessly and negligently left open at all times by the defendant, so that anyone passing by could see the same, and could pass through said opening and under the building into the space in and through which the elevator was operated." In argument, counsel repeat this statement of the situation, and add that, for many years, children, with the knowledge of defendant, were accustomed to go upon the factory grounds and carry away the corn husks; and that, in doing so, "these children passed by the dumping shed and by the opening in which was the conveyor belt, and could see the same in operation;" and that children, when passing said opening, were in the habit of stopping and watching the conveyor belt in operation; and by way of conclusion it is alleged that "said opening and conveyor belt running therein was an attractive nuisance." It is also said in the brief that "defendant knew that children were in the habit of climbing and crawling through said opening." This last assertion appears to be a mistake; for we find in the abstract no evidence that on any prior occasion had the deceased or others of the children crawled into the space under the dump where the deceased was killed. Reducing the complaint made by the plaintiff to brief and simple terms, the alleged negligence of the defendant is in its failure to close or guard the hole under the dump floor in a manner to prevent the deceased from crawling through it. In our judgment, the fact shown is insufficient to sustain a verdict for damages, and the trial court did not err in so directing the jury. While there is evidence from which the jury could find that the children had license to

enter the grounds and cart away the husks, and that defendant knew that this practice was carried on, there is no showing that these licensees were permitted or were in the habit of meddling with the operation of the conveyor or other machinery. That, in passing to and fro from the husk pile, they may have stopped to watch the operation of the conveyor may readily be believed; but assuming that such was the case, we discover nothing in the fact which should reasonably have suggested to the defendant the necessity of closing the hole under the floor, to prevent some inquisitive lad from crawling through into the basement. The case at this point is not unlike that found in *Brown v. Rockwell City Can. Co.*, 132 Iowa 631, 634, where a boy watching the operation of an elevator in a canning establishment suddenly thrust his arm within reach of the moving machinery to recover his cap, which a companion had thrown upon the elevator belt, and received severe injury. It was there held, as a matter of law, that the defendant was not chargeable with negligence for failing to provide guards against such an accident. Perhaps even more closely parallel in principle is *Hart v. Mason City B. & T. Co.*, 154 Iowa 741, 742, where boys playing about the yard of the defendant company entered the open door of a room or place in which was a revolving horizontal steel shaft, upon which they ventured to play. While they were so engaged, the clothing of one of the boys became wound on the shaft, and he was badly hurt. On suit for damages, it was contended for plaintiff that the rule of the *Edgington* case and other cases of that class was applicable. There was a recovery of damages in the trial court; but on appeal we held that there was no liability. The reasons for such holding were there quite fully discussed, and we will not extend this opinion for their repetition.

The distinction between the two lines of authorities to which we have referred may sometimes be narrow; but it is, nevertheless, a substantial one, which cannot be safely ignored.

We find no ground for disturbing the judgment of the district court, and it is, therefore,—*Affirmed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.