MARGARET I. FLATLEY, Appellee, v. ACME GARAGE et al., Appellants.

**NEGLIGENCE:** Condition of Premises—Invitee (?) or Licensee (?)
1  A mother who enters a public garage on a public street in quest of her child, who had momentarily escaped from her custody, is, while in the garage, a mere *licensee,* and may not recover for an injury consequent on the defective condition of the premises.

**NEGLIGENCE:** Acts Constituting—Door Guards on Garage. It is not
2  negligent in the construction of a public garage to place heavy protecting irons on each side of the door jambs, even though the lower ends of the irons extend something like a foot into the driveway.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

JUNE 22, 1923.

ACTION to recover damages for personal injury. The jury returned a verdict in favor of plaintiff for $500. Defendants appeal. Facts appear in the opinion.—*Reversed and remanded.*

*Miller, Kelly, Shuttleworth & McManus,* for appellants.

*C. S. Missildine,* for appellee.

ARTHUR, J.—Appellants Ben Woolgar and William Flatley were operating a garage, known as the Acme Garage, located on Sixth Street, between East Walnut and East Locust Streets, in the city of Des Moines. The building in which the garage was located was owned by the Iowa Investment Company. The building was 66 feet wide and 150 feet long. Opening on the street was a main entrance, 12 feet wide and 13 feet high, where cars were driven in and out. There was another small door in the front of the building entering the office, which was closed at the time in question. On either side of the main entrance there were guard rails. Said guard rails were installed by the owners of the building, the Iowa Investment Company, after appellants had occupied the building for some time, on the owner's initiative, and not at the request of the tenants. The guard rails were evidently for the purpose of protecting the door jambs. The guard rails were railroad irons, 28 inches long and 4 inches wide. They were imbedded in the cement floor at the lower ends. At the tops, the guard rails fitted into the door jambs, and leaned against the walls of the building. The distances at the floor between the door jambs and the inner edges of the guard rails were ten inches. Thus the guard rails formed hypothenuses of triangles. We insert a photograph which will be helpful in understanding the physical situation involved in this case.

*1. NEGLIGENCE: condition of premises: invitee (?) or licensee (?)*

Appellee and her family were residents of Illinois. At the time in question, she and her husband, Edward G. Flatley, and a daughter and little son, were in Des Moines, visiting her husband's brother, appellant William Flatley, and his family. Appellee and her children had preceded her husband on the visit to Des Moines. On the evening in question, appellee's husband arrived in Des Moines, and she met him at the depot, and they walked to the garage. The proprietors of the garage, Woolgar and William Flatley, were at the garage, and also Mrs. William Flatley was in an automobile across the street from the garage. William Flatley and his wife, his brother, Edward Flatley, and appellee went in an automobile from the garage to the home of William Flatley. Later in the evening, they all returned to the garage, and parked their automobile along the curb north of

the entrance of the garage, where they all got out of the car and went into the garage. After visiting a few minutes with Woolgar and his wife, appellee and her sister and appellee's daughter went out of the garage onto the sidewalk to the south entrance of the garage, and were waiting for William Flatley and Edward Flatley to join them, expecting to go to the grounds of the State Capitol, to view a parade. The children of the Flatleys were playing on the sidewalk, among them the little son of appellee, whose age the record does not disclose. While the parties were standing on the sidewalk on the south side of the driveway, a car was driven into the entrance, and William and Edward Flatley, who had come out of the garage just before the car entered, returned into the garage, and appellee's little boy ran into the entrance of the garage. Appellee started into

the entrance, to get the little boy. Appellee testified that she was standing near the south side of the entrance, and turned to go into the entrance of the garage, and that:

"I caught my foot under the iron, and it threw me down. Just above the ankle is where it hurt. I felt something strike it when I went to go in at the door. I felt that I had hit something, and it threw me forward onto the floor. When I got up, I was sitting there, holding my right limb. I had not seen the iron rail before, and I did not see it when I started into the garage. When I went into the garage, I was looking to see where the little boy had gone. I caught my foot under that iron that sticks out in the door. I think it was my left foot that I caught, and walked into it with my right foot."

In the accident, the tibia bone of the right leg of appellee was broken.

On the trial, appellants insisted that appellee's fall was not caused by catching her foot in the space between the guard rail and the jamb; that she had not touched the guard rail, but simply fell, without tripping on any obstacle; and that the accident and consequent injury resulted from appellee's own negligence. These are issues which it will not be necessary to consider, in determining the case.

At the close of all the evidence, appellants moved for a directed verdict on several grounds, among which, in substance, were that, at the time of the accident, appellee was at the garage without any solicitation on the part of appellants, and that, when so entering the garage at the time of the accident, she was a mere licensee upon the premises, and assumed her own risk in going into the entrance of said garage, and that appellants were not liable for any injury sustained. The motion further stated, in substance, that the placing, construction, and maintenance of said guard rails at the sides of the entrance of the garage did not, as a matter of law, constitute actionable negligence. Appellants' motion for a directed verdict was overruled, and the case submitted to the jury. The only act of negligence alleged which was submitted to the jury was as follows:

"In maintaining the iron guard rail in the driveway of the main entrance of the garage in such a manner as to cause an

obstruction, by means of which plaintiff could be injured when entering the premises of defendants.''

The jury found in favor of appellee, and assessed damages in the amount of $500. Judgment was entered on the verdict, from which judgment this appeal is prosecuted.

. · I.  Appellants assign as errors relied upon for reversal that the court erred in not sustaining appellants' motion for directed verdict, for several reasons: among them, in substance, that appellee was in the place of business of appellants without any solicitation or invitation on their part, and for no purpose of transacting any business; and that, when she started to enter the garage, she assumed all risks in making the entrance to said garage; and that the evidence shows, without dispute, that the guard rails at the sides of the entrance of the garage are not negligent construction, and do not constitute actionable negligence; and that, therefore, there was no liability on the part of appellants for the injury received by appellee.

II.  Hereinbefore we have set out the testimony fully, so far as it relates to appellee's being at the garage at the time of the accident.  Immediately on return to the garage from the William Flatley home, the party entered the garage, and repaired to a place where Woolgar was working.  The Illinois people were introduced to Woolgar and his wife.  The parties visited for a few minutes, and then the Flatley women went out of the garage onto the sidewalk, and were waiting for the Flatley men to join them, expecting to go up on Capitol Hill to view a parade.~ The children were playing outside of the garage. Presently, the Flatley men came out of the garage.  But before the party got started away from the garage, an automobile was driven into the entrance, and the Flatley men went along in after it.  Appellee's little boy was following his father into the garage, and appellee started to get her boy and bring him out; and the accident in question happened.  There is no dispute in the evidence as to just what was the purpose of appellee upon the premises at the place of the accident and at the time of the accident.  She was not at the garage at any time on any business transaction.  At the time she started to enter the garage, it was for the purpose, as testified to by her, simply of getting her boy and bringing him out of the garage.  Entering the

garage for such purpose was on her own volition, and not at the invitation or suggestion of anyone. She was, at most, a mere licensee.

The trial court erred in refusing to sustain the motion to direct verdict on the ground that appellee was a mere licensee on the premises at the time of the accident in question. Perhaps it might be argued with some plausibility that, when the Flatley families together entered the garage, not for any business purpose, but to visit a few minutes with Woolgar and his wife, appellee was, in that instance, an invitee. But it certainly cannot be said that, after appellee was through with the people inside, and came out of the garage and was waiting to go somewhere else, she had any invitation by appellants to again enter the garage. The door was open, and she could enter at her own risk; but she could not hold appellants liable for the accident that befell her in so attempting to enter. Appellee's attempt to enter the garage was for the purpose of getting her boy, which was strictly a personal errand of her own, concerning which appellants had nothing whatever to do.

We think the conclusion is inescapable that appellee was a licensee on the premises at the time of the injury. As such licensee, she is not entitled to recover. On that point we will simply cite *Keeran v. Spurgeon Merc. Co.*, recently decided, 194 Iowa 1240, wherein this question is discussed, and many cases cited on the proposition.

III. Hereinbefore appears a description of the guard rails complained of, their form and location, and we need not repeat the same. We reach the conclusion that the construction, placing, and maintaining of said guard rails did not constitute actionable negligence on account of which appellants were liable in damages to the appellee. Appellants' motion on this point for directed verdict should have been sustained.

2. NEGLIGENCE: acts constituting: door guards on garage.

The case is—*Reversed and remanded.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.