Daisy McKiddy, Administratrix, Appellee, v. Des Moines Electric Company, Appellant.

NEGLIGENCE:   Condition and Use of One's Own Land—Trespassers and "Attractive Nuisances." An owner of property may so negligently use it as to become liable in damages for a resulting injury to a *trespasser*. A jury question, both as to negligence and contributory negligence, is presented by testimony tending to show that an owner, without full compliance with city ordinance requirements, erected and maintained, on his own uninclosed, populously surrounded, and promiscuously frequented premises, which abutted upon an uninclosed and much frequented public park and fishing resort, a pole with a ladder thereon in the form of spikes driven therein, and with a cross-arm on the pole, some 25 feet from the ground, carrying wires heavily charged with electricity, and that a *trespassing* boy 14 years of age, and of ordinary intelligence, climbed the pole and, upon reaching the cross-arm, was killed by an electric shock.

Headnote 1:   20 C. J. pp. 390, 392; 29 Cyc. pp. 443, 638.

Headnote 1:   32 L. R. A. (N. S.) 559; L. R. A. 1918E, 1039; 17 A. L. R. 833; 36 A. L. R. 181; 39 A. L. R. 490; 45 A. L. R. 991 (Anno.); 20 R. C. L. pp. 57–61, 79.

*Appeal from Polk District Court.*—Joseph E. Meyer, Judge.

JANUARY 19, 1926.

REHEARING DENIED SEPTEMBER 21, 1926.

Action for damages resulting from the death of plaintiff's intestate, who was killed by coming in contact with an electric wire on a pole belonging to the defendant. Verdict was returned for the plaintiff, and the defendant appeals.—*Affirmed.*

*Bradshaw, Schenk & Fowler,* for appellant.

*Holly & Holly,* for appellee.

Faville, J.—Appellant operates an electric light plant in the city of Des Moines. Said plant is located upon the west bank of the Des Moines River, and in a closely built up part of the

city. Appellant carries a portion of its electric current on a number of wires from said plant across the river eastward, and distributes the same to the part of the city lying east of the river. Upon the east bank of the river appellant maintains three poles, which carry a number of said wires. These poles are set upon property belonging to appellant, and immediately adjacent to the river bank. At the time of the injury in question, the middle one of the three poles was equipped with spikes driven on either side of the pole, as a ladder, and approximately eighteen inches apart, the lowest one of said spikes being about eighteen inches from the ground. About twenty-five feet above the ground on said pole was a cross-arm bearing insulators, to which were attached electric wires carrying heavy voltage. To the three poles were attached a number of guy wires, which extended from the upper part of the poles to the ground east of the poles. Immediately adjacent to the tract of ground upon which said poles were located, and south thereof, along the east river bank, extending to Grand Avenue, is a city park, which was used generally by the public. There was no line of demarcation or anything to indicate the boundary line between the north end of this park and appellant's tract of ground. The two tracts were open and uninclosed, and were used by the public indiscriminately. It was a common and frequent thing for the public to pass up and down the river bank across appellant's tract of ground. The record shows that children frequented the park in question, and played in the park and on or about the tract of ground belonging to appellant upon which said poles were located. A baseball diamond was located in the park not far from the poles in question. Appellee's intestate, at the time of the injury, was a boy somewhere between twelve and fourteen years of age, his exact age not being certain, under the record. The evidence shows that he was a precocious and unusually bright boy, in respect especially to reading and literary pursuits. His knowledge of physics or mechanics is shown to have been quite limited. He was an inveterate reader, mostly of books of adventure. Upon the day in which the injury in question occurred, appellee's intestate, with two boy companions of approximately a similar age, were fishing in the Des Moines River, and in the course of fishing they traveled along the east bank of the river, through the city park and upon the tract of land adjacent thereto be-

longing to appellant, upon which said electric poles were located. The boys were playing, loitering, and fishing, and did not at all times stay close together. Appellee's intestate was discovered seated upon a cross-arm of the middle pole, which was the one upon which the spikes, or handholds, were located. There is some dispute in the record as to exactly how appellee's intestate reached the position in which he was seen upon the cross-arm on this pole, it being the contention of appellant that the boy climbed up the north pole of the three referred to, which was a smooth pole. The jury, however, might properly have found, under the evidence, that the boy climbed the middle pole. A man who observed the boy upon the cross-arm shouted a warning to him, which, because of the distance and the roar of the waters, may not have been heard. About that time, the boy received an electric shock in some manner from the charged wires, in such a way as to cause his death. The exact manner in which the current of electricity was caused to enter the body of the boy is not altogether certain from the record, it being the contention of appellee that the boy came in contact with or near to an uninsulated guy wire, and that the current "jumped" from the electric wire and caused a circuit to pass through his body. In any event, the death was caused by a charge of electricity received by the boy while on the cross-arm, either by coming in contact with or in close proximity to a wire bearing a high-voltage current of electricity.

At the time of the injury, the ordinances of the city of Des Moines provided that any corporation maintaining any wire used to conduct electricity within said city should cause each pole upon which the wire was attached to be marked "dangerous," in black letters not less than three inches in height, on two sides of said poles. An ordinance also required that any corporation maintaining a guy wire attached to any pole which carried an electric wire should cause the guy wire to be kept effectually insulated at a distance of not less than nine or more than eleven feet from each end thereof. It is undisputed in the record that, at the time of the injury in question, the pole referred to was not marked as required by said ordinance, and it is also shown that the guy wires attached to said pole were not insulated in the manner required by the ordinance of the city.

At the close of the testimony, appellant moved for a directed

verdict, which motion was overruled, and the cause was submitted to the jury. Appellant's motion for a directed verdict raised squarely the question that appellee's intestate, at the time of the injury, was a trespasser, and that appellant owed him no duty except the care due a trespasser. The court overruled the motion, and submitted to the jury the question of appellant's negligence in the maintenance of said pole.

I. The first question for our determination is the question of the legal relationship between appellee's intestate and appellant at the time of the injury. It is a universal and fundamental rule that anyone may use his own real estate for any lawful purpose, in so far as he does not interfere in any way with the rights of the public or of individuals. The duty which the owner of premises owes to a trespasser or mere licensee is discussed in the following and many other cases: *Printy v. Reimbold,* 200 Iowa 541; *Flatley v. Acme Garage,* 196 Iowa 82; *Nelson v. Lake Mills Canning Co.,* 193 Iowa 1346; *Masteller v. Chicago, R. I. & P. R. Co.,* 192 Iowa 465; *Davis v. Malvern L. & P. Co.,* 186 Iowa 884; *Heiss v. Chicago, R. I. & P. R. Co.,* 103 Iowa 590.

Under some circumstances, a property owner may be guilty of negligence in the use of his own premises in such a manner as to be liable to one who is technically a trespasser thereon. "*Sic utere tuo ut alienum non laedas*" is an ancient maxim, and it has been greatly extended in its application in more modern times. Starting with the English case of *Lynch v. Nurdin,* 1 Adolphus & Ellis (N. S.) 422 (1 Q. B. [1841] 29), there have been many cases, both English and American, that have recognized a liability for the negligent use of one's own property where injury resulted to one who was technically a trespasser. Originating with the so-called "turntable cases," the rule has been extended to other instrumentalities, until now the so-called "attractive-nuisance theory" is recognized by the majority of the courts of last resort of the United States. A number of courts still consistently refuse to subscribe to the theory as being sound in law. There has been great conflict in the decisions regarding the "attractive-nuisance" cases, and various reasons assigned for allowing or refusing recovery in such cases.

It is quite unnecessary that we enter into an extended review of the authorities pro and con on this question. In *Edgington v. Burlington, C. R. & N. R. Co.,* 116 Iowa 410, we said:

"If the owner of a lot build a fence around it, or if he cultivate or reside upon it, or beautify it with lawn and ornamental shrubbery, he gives notice to the world of his desire for its exclusive enjoyment, and he who disregards this notice takes upon himself the risk to which his trespass may expose him.  If, however, the owner take away the fence, throwing his lot open in unused and unimproved condition, leaving the public to swarm over and across it and children to play upon it, he cannot be held innocent of wrong if by his act this semipublic use of his property is made hazardous to human life, and he fails to take reasonable precaution against the danger thus occasioned.  Nor is such responsibility confined entirely to vacant and unused property."

Ever since the *Edgington* case, this court has recognized the "attractive-nuisance" doctrine.  Of necessity, it has allowed or denied application of the doctrine as the particular facts of each case would justify and require.  As illustrating our holdings, see 7 Iowa Law Bulletin, No. 2, page 65; *Edgington v. Burlington, C. R. & N. R. Co.*, supra; *Wilmes v. Chicago G. W. R. Co.*, 175 Iowa 101; *Smith v. Illinois Cent. R. Co.*, 177 Iowa 243; *Hart v. Mason City Brick & Tile Co.*, 154 Iowa 741; *Fishburn v. Burlington & N. W. R. Co.*, 127 Iowa 483; *Brown v. Rockwell City Canning Co.*, 132 Iowa 631; *Anderson v. Fort Dodge, D. M. & S. R. Co.*, 150 Iowa 465; *Ashbach v. Iowa Tel. Co.*, 165 Iowa 473; *Nelson v. Lake Mills Canning Co.*, supra.

From these cases and many others which might be cited, a few general rules appear to be definitely established as essential to the creation of liability for injury to a child who is, in the eyes of the law, a technical trespasser.  It is obvious that in all such cases certain fundamental requisites are essential, before there can be liability.  It must appear that the defendant knew, or was chargeable with knowledge, of the dangerous character of the instrumentality, and that the defendant's knowledge in that respect was superior to that of the child.  Again, the age and mental attainments of the injured child must be considered.

No hard and fast rule of liability or nonliability can be fixed in this regard.  It is a matter of common knowledge that children of very tender years know and appreciate the danger of exposed fire and of open water, while the same children may not appreciate the danger of machinery or other similar instru-

mentalities. In a large measure, each case must be determined in this respect, not alone by the age, but by the degree of mentality and intelligence possessed by the child, as shown by the evidence, to observe and appreciate the particular danger.

Also, the character of the danger, whether open and obvious or hidden and latent, is an important consideration in cases of this kind. Consideration must also be given to the kind and character of the instrumentality that causes the injury. The term "attractive nuisance" is not inapt. The instrumentality must be one which the owner may reasonably be charged with knowing is of a character to attract or allure children of tender years. Mr. Justice Cooley well said, in *Powers v. Harlow*, 53 Mich. 507 (19 N. W. 257):

"Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly. If they leave exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken."

Again, an important consideration in such cases is the location of the instrumentality that caused the injury. Obviously, consideration in such cases is to be given to the question as to whether the instrumentality is located near a public highway or other public place resorted to by children, and easily accessible, or whether it is located at a distant or more exclusive and private place. In some cases it is also a matter of consideration whether or not the owner of the instrumentality has a legal right to maintain the same at the place and in the manner in which the same was maintained at the time of the injury, even though the instrumentality was wholly upon the owner's premises.

In the foregoing, we have not attempted a conclusive recital of the matters which are proper to be considered in determining whether or not the "attractive-nuisance doctrine" is applicable. Admittedly, appellee's intestate was technically a trespasser upon appellant's property. Unless the attractive-nuisance theory is applicable in this case, appellant cannot be held liable, and its motion for a directed verdict, on the ground that appellee's

intestate was a trespasser, should have been sustained.   There is no claim or proof that appellant acted wantonly or willfully in causing the injury to appellee's intestate.

Does the case come within the rule of an attractive nuisance? There can be no question that the pole in question, bearing a large number of wires carrying an electric current of high voltage, was a dangerous instrumentality.   It was such an instrumentality that the city ordinances of the city of Des Moines required that the pole should be plainly marked with the word "dangerous."   The ordinance was mandatory, whether the pole was located on the owner's premises or on a public highway or elsewhere.

In the case at bar we have a situation where the wires of appellant, bearing a high and dangerous current of electricity, were placed on the cross-arms of a pole located on an uninclosed tract of land in close proximity to a public park, and with no marks separating the tract upon which the pole was located, from the park.   Aside from this, the pole was located close to the river bank, where the public frequently passed up and down the river.   All of this was in the heart of the largest city in the state.

Under the record, there can be no doubt that appellant was fully chargeable with notice of the situation, and that children played in the immediate vicinity of this pole and were passing up and down the river next to it frequently.   There is no question but that the pole was maintained in direct violation of the ordinance regarding a warning sign thereon.   The pole was so located and equipped that a jury might well have found that it was naturally attractive to a boy of twelve or thirteen years of age.   It was located upon the edge of a river bank, where a more extended view up and down the river could be obtained from the cross-arm, as well as a view over a portion of the city; and it cannot be said that a jury could not regard it as "an allurement" to an active and ambitious boy, possessed of the normal propensities incident to childhood.   At a point twenty-five feet up the pole were the convenient cross-arms, affording an opportunity for an inviting seat of observation, and upon the pole itself, from a point eighteen inches above the ground, extending to the cross-arms, was a conveniently arranged ladder, for no other apparent purpose than to enable a person to climb to the cross-arm.   A jury could find that here was "an implied invita-

tion" to a child of tender years to experiment. All of this was maintained without a semblance of sign or notice that any danger lurked about the premises or was hidden in the wires located on the cross-arm.

It was for the jury to say, under all of the facts and circumstances, whether or not appellant was negligent in maintaining this instrumentality at the place and in the manner in which it existed.

Again, under the entire record in the case, it was a question for the jury to determine whether appellee's intestate was of such age, experience, intelligence, and knowledge that he knew and appreciated the danger in climbing the pole in question, and was guilty of contributory negligence.

The court did not err in overruling appellant's motion for a directed verdict upon the several grounds urged therein.

II.   Complaint is made of certain instructions that were given the jury. The argument of appellant on the instructions fails to comply with the provisions or the clear intent of Rule 30 of this court. However, the argument as to the instructions inheres chiefly in the argument regarding the questions heretofore discussed. The court might have amplified and enlarged some of the instructions profitably, but we find no error therein presented to us that justifies interference on our part.

The judgment must be, and it is,—*Affirmed.*

EVANS, STEVENS, VERMILION, and ALBERT, JJ., concur.